# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

NEW GEORGIA PROJECT and A.
PHILLIP RANDOLPH INSTITUTE,

    *Plaintiffs*,

v.

BRAD RAFFENSBERGER, in his official capacity as Georgia Secretary of State,

JOHN FERVIER, SARA TINDALL GHAZAL, JANICE W. JOHNSTON, RICK JEFFARES, and JANELLE KING, in their official capacity as members of the Georgia State Election Board

COLIN McRAE, WANDA ANDREWS, WILLIAM L. NORSE, KATHERINE A. DURSO, and DEBRA GEIGER, in their official capacity as members of the Chatham County Board of Registrars,

BARBARA LUTH, JOEL NATT, CARLA RADZIKINAS, ANITA TUCKER, and DAN THALIMER, in their official capacity as members of the Forsyth County Board of Voter Registrations and Elections,

CATHY WOOLARD, AARON V. JOHNSON, MICHAEL HEEKIN, TERESA K. CRAWFORD, and JULIE ADAMS, in their official capacity as

Civil Action
Case No. _____

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

**Section 8 of the National Voter Registration Act of 1993 (52 U.S.C. § 20507); First and Fourteenth Amendments to the United States Constitution**

1

members of the Fulton County Board
of Registration and Elections,

KAREN EVANS-DANIEL, ROBERT
ABBOTT, JOEL HAZARD, THOMAS
ELLINGTON, and MIKE KAPLAN,
in their official capacity as members of
the Macon-Bibb County Board of Elec-
tions,

WANDY TAYLOR, DAVID HAN-
COCK, LORETTA MIRANDOLA,
ALICE O'LENICK, and ANTHONY
RODRIGUEZ, in their official capacity
as members of the Gwinnett County
Board of Registrations and Elections,
and

BEN JOHNSON, JAMES NEW-
LAND, ROY McCLAIN, JAMES A.
O'BRIEN, and DEXTER WIMBISH,
in their official capacity as members of
the Spalding County Board of Elec-
tions and Voter Registration,

>            *Defendants*.

## **INTRODUCTION**

1.      This action seeks declaratory and injunctive relief to stop the (1) re-

peated, unlawful removal of eligible voters from the registration list; (2) implemen-

tation of Section 5 of Senate Bill 189 ("SB 189"), which further enables these types

of unlawful voter removals based on mass challenges by enshrining them in state

law; and (3) enforcement of Section 4 of SB 189, which forces unhoused voters

2

without a permanent address to use their county registrar's office as their mailing address for election purposes.

2.     Under Section 8(d) of the National Voter Registration Act of 1993 ("NVRA"), an election official may only remove voters from the registration list on the basis that they have moved if one of two requirements are met. First, voters may be removed if the voter confirms in writing that they have moved. Second, voters may be removed if they receive written notice that their address needs to be confirmed and they fail to vote or otherwise confirm their address with election officials during the next two federal election cycles.

3.     Election officials in Chatham, Gwinnett, Forsyth, and Spalding Counties are violating Section 8(d) by removing voters who have been subjected to mass challenges based on an alleged change of address without meeting either of these requirements. These county boards have purged voters based on unvetted documentation and unreliable information provided by private citizens, such as screenshots of purported property records or social media posts.

4.     Unlawful voter removals stemming from mass challenges will only accelerate with the enactment of Section 5 of SB 189. Section 5 adds, for the first time, language to Georgia state law sanctioning voter removals due to residency-based challenges. It provides, for example, that probable cause is established if a voter obtains a homestead exemption in a different jurisdiction.

3

5.      Section 4 of SB 189 forces unhoused voters without a permanent address—and only unhoused voters—to receive all of their election mail at their county registrar's office. This law prohibits unhoused voters without a permanent address from retrieving election mail from a post office box, homeless shelter, or any other mailing address of their choosing. Many unhoused voters lack the transportation necessary to reach their registrar's office and receive their election mail. Section 4 consequently violates the United States Constitution and the NVRA.

6.      Unless the Court grants the relief requested herein, County Defendants, Defendant Secretary of State Raffensperger, and other election officials will continue to unlawfully remove voters from the registration list and maintain inaccurate voter rolls.  In addition, many unhoused voters without a permanent address will be unable to obtain their election mail due to the unlawful mailing address restriction.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 because this action arises under the United States Constitution and laws of the United States; under 28 U.S.C. §§ 1343(a)(3)-(4) and 1357 because this action seeks equitable and other relief pursuant to an act of Congress providing for the protection of the right to vote; and under 42 U.S.C. §§ 1983 and 1988 because this action seeks to enforce rights and privileges secured by the United States Constitution and laws of the United States.

8.     This Court has authority to issue declaratory and injunctive relief in this action under 28 U.S.C. §§ 2201 and 2202.

9.     This Court has personal jurisdiction over the Defendants, who are sued in their official capacities only.

10.     Venue is proper in the United States District Court for the Northern District of Georgia under 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2), and in this division under Local Rule 3.1, because several Defendants reside in this district and this division and a substantial part of the events that gave rise to Plaintiffs' claims occurred in this district.

## PARTIES

11.     Plaintiff New Georgia Project (NGP) is a nonpartisan, non-profit organization that works to increase the civic participation of historically marginalized communities across Georgia through nonpartisan voter registration, voter education, and get out the vote efforts, as well as by organizing and advocating on issues important to those communities. NGP works closely with a network of key activists and leaders from underserved communities, including communities or color, working class communities, low-income communities, and communities of unhoused Georgians, with members seeking to register to vote. These activists help shape NGP's agenda and play a critical role in implementing NGP's programs. Voters who registered through registration drives conducted by NGP or were targeted by NGP's

get out the vote efforts have had their eligibility to vote challenged through mass voter challenges. On information and belief, NGP expects these challenges to continue in the future.

12.     Voter challenges are causing and will continue to cause harm to NGP's mission of encouraging voter registration and participation among underserved communities. The removals of eligible voters is causing and will cause NGP to expend additional resources, including money and staff and volunteer time, to protect eligible voters whose right to vote is being challenged, for example, by educating voters about what to do when they are challenged and assisting voters whose eligibility to vote is being challenged. NGP must also expend additional resources regularly monitoring boards of elections for voter challenges, tracking voter challenges, and reaching out to and assisting voters targeted by voter challenges.

13.     NGP's core voter registration and get out the vote work includes, among many other forms of work in counties across Georgia, efforts in Chatham and Fulton Counties to register unhoused voters who lack a permanent address and help them vote. The mailing address restriction contained in Section 4 of SB 189 will force NGP to divert resources, such as staff and volunteer time, to educate unhoused voters without a permanent address about when and where to retrieve their election mail. This will include helping impacted voters create a plan to retrieve election mail or, in some cases, providing transportation or otherwise helping unhoused voters

obtain their election mail. Without new and additional forms of assistance, unhoused voters in Chatham and Fulton Counties lacking a permanent address who are registered to vote by NGP and targeted as part of NGP's get out the vote efforts will be unable to access their election mail due to the mailing address restriction.

14.    As a result, NGP is limited, and will continue to be limited, to devoting fewer resources to its core organizational activities, including voter registration drives and get out the vote work, unless the practice of unlawfully removing eligible voters from the registration list is enjoined. Diversions will also continue to occur due to all Defendants' enforcement of the unlawful provisions of O.C.G.A. §§ 21-2-230 and 21-2-217(a). Additionally, Defendants' violations will impact and harm NGP's constituents.

15.    Plaintiff A. Phillip Randolph Institute (APRI) is a nonpartisan, non-profit civic organization of trade unionists who fight for racial equality and social and economic justice for working families. APRI registers voters, provides voter education services, and organizes get out the vote initiatives. APRI is a membership organization that has members statewide and chapters based in Fulton, Macon-Bibb, and Chatham Counties. APRI members are at risk of being the target of mass challenges brought pursuant to O.C.G.A. § 21-2-230, as amended by Section 5 of SB 189.

16.     Because of the ongoing removal practices and the unlawful provisions of O.C.G.A. § 21-2-230, APRI must expend additional resources, such as staff, member, and volunteer time, instructing voters on how to avoid being successfully targeted by a voter challenge and what to do if they are challenged. APRI must also expend additional resources reaching out to and assisting challenged voters. Further, APRI must pull in additional resources from other state APRI chapters, including staff, members, and volunteers, to support statewide and local efforts to counteract the impact of Section 5 of SB 189.

17.     Because of Section 4 of SB 189, APRI will expend additional resources counteracting the unlawful provisions of O.C.G.A. § 21-2-217(a) by instructing un-housed voters without a permanent address when and where to retrieve their election mail, creating a plan to retrieve election mail, and providing low cost or free transportation options to retrieve election mail like bus cards. Further, APRI must pull in additional resources from other state APRI chapters, including staff, members, and volunteers, to support statewide and local efforts to counteract the impact of Section 4 of SB 189.

18.     Resources expended on these activities are diverted away from APRI's core voting and advocacy related activities, including, for example, voter registration and get out the vote efforts, advocacy on labor issues, and other important projects. Resources expended counteracting Defendants' violations are additionally diverted

away from APRI's projects in other states. Diversions will continue to occur for as long as the practice of unlawfully removing voters from the registration list is not enjoined. Diversions will also continue to occur due to all Defendants' enforcement of the unlawful provisions of O.C.G.A. §§ 21-2-230 and 21-2-217(a). Additionally, Defendants' violations will impact and harm APRI's members and constituents.

<u>Defendants</u>

19.     Defendant Brad Raffensperger is being sued in his official capacity as the Georgia Secretary of State. Secretary Raffensperger is being sued under Counts I, III, and IV in this lawsuit. Secretary Raffensperger is the chief election official responsible for the coordination of Georgia's list maintenance and other responsibilities under the NVRA as well as the Help America Vote Act of 2002. *Id*. §§ 21-2-210, 21-2-50.2; 52 U.S.C. § 20509. Secretary Raffensperger's responsibilities include maintaining the state's official list of registered voters and preparing and furnishing information for citizens pertaining to voter registration and voting. O.C.G.A. §§ 21-2-50(a)(14), 21-2-211. Removal based on voter challenges are reflected on the state's official list of registered voters. Secretary Raffensperger is responsible for enforcing election statutes and routinely provides training and issues guidance to county boards of registrars and elections of all 159 Georgia counties on various elections procedures. *Id*. Secretary Raffensperger has touted his efforts to clean Georgia's registration list in advance of the 2024 election cycle, including by taking

action to identify, correct, verify, or remove nearly 875,000 voters who purportedly moved in or out of Georgia, and ensure that those outdated registrations were corrected.

20.     Defendants John Fervier, Sara Tindall Ghazal, Janice W. Johnston, Rick Jeffares, and Janelle King are members of the Georgia State Election Board ("SEB") and are being sued in their official capacity. The SEB Defendants are being sued under Counts I, III, IV, and V in this lawsuit. The SEB is the body in Georgia that oversees elections; promulgates rules and regulations to obtain uniformity in the practices and proceedings of registrars and other election officials; and formulates, adopts, and promulgates rules and regulations pertaining to the conduct of elections, including such rules and regulations necessary to effectuate those provisions of Georgia election law created and amended by Sections 4 and 5 of SB 189. O.C.G.A. § 21-2-31. The SEB also has authority to impose sanctions on county boards of registrars who fail to comply with Georgia voter challenge provisions under O.C.G.A. §§ 21-2-229 and 21-2-230. O.C.G.A. §§ 21-2-229(f), 21-2-230(j). The day after SB 189 was signed into law, Defendant SEB Chair John Fervier said that the SEB is "going to probably have to try and provide some instruction telling" county election officials how to respond to SB 189. The Georgia Secretary of State's office has previously supported the idea of SEB Defendants promulgating rules that clarify how county election officials must handle voter challenges.

21.    Defendants Colin McRae, Wanda Andrews, William L. Norse, Katherine A. Durso, Debra Geiger are members of the Chatham Board of Registrars and are being sued in their official capacity. The Chatham County Board of Registrars is a body created by state law to oversee voter registration in Chatham County.

22.    Defendants Barbara Luth, Joel Natt, Carla Radzikinas, Anita Tucker, and Dan Thalimer are members of the Forsyth County Board of Voter Registrations & Elections and are being sued in their official capacity. Forsyth County Board of Voter Registrations and Elections is a body created by state law to conduct elections and oversee voter registration in Forsyth County. The Forsyth County Defendants are being sued under Counts I and II in this lawsuit.

23.    Defendants Wandy Taylor, David Hancock, Loretta Mirandola, Alice O'Lenick, and Anthony Rodriguez are members of the Gwinnett County Board of Registrations and Elections and are being sued in their official capacity. Gwinnett County Board of Registrations and Elections is a body created by state law to conduct elections and oversee voter registration in Gwinnett County. The Gwinnett County Defendants are being sued under Counts I and II in this lawsuit.

24.    Defendants Ben Johnson, James Newland, Roy McClain, James A. O'Brien, and Dexter Wimbish are members of the Spalding County Board of Elections and Voter Registration and are being sued in their official capacity. Spalding County Board of Elections and Voter Registration is a body created by state law to

conduct elections and oversee voter registration in Spalding County. The Spalding County Defendants are being sued under Counts I and II in this lawsuit.

25.     Defendants Cathy Woolard, Aaron V. Johnson, Michael Heekin, Teresa K. Crawford, and Julie Adams are members of the Fulton County Board of Registration and Elections and are being sued in their official capacity. Fulton County Board of Registration and Elections is a body created by state law to conduct elections and oversee voter registration in Fulton County.  Fulton County Defendants have not removed voters in violation of the NVRA but are included here as defendants for purposes of obtaining full and complete relief as to SB 189 because APRI has a chapter in Fulton County and because both APRI and NGP conduct voter registration and get out the vote work in communities in Fulton County, including in unhoused communities. The Fulton County Defendants are being sued under Counts I, III, IV, and V in this lawsuit.

26.     Defendants Karen Evans-Daniel, Robert Abbott, Joel Hazard, Thomas Ellington, and Mike Kaplan are members of the Macon-Bibb County Board of Elections and are being sued in their official capacity. Macon-Bibb County Board of Elections is an administrative body created by state law to conduct elections and administer voter registration in Macon-Bibb County. The Macon-Bibb County Defendants are being sued under Counts I, III, IV, and V in this lawsuit.

27.     The aforementioned Chatham, Forsyth, Fulton, Gwinnett, Macon-Bibb, and Spalding County Defendants are referred to herein as "County Defendants."

28.     A copy of the notice letter advising Defendants of the NVRA violations described herein is attached as Exhibit 1.

## FACTS AND BACKGROUND

### Requirements of the NVRA

29.     The NVRA was passed to "establish procedures that will increase the number of eligible citizens who register to vote in elections for Federal office" and "ensure that accurate and current voter registration rolls are maintained." 52 U.S.C. § 20501(b)(1), (4).

30.     Section 8 of the NVRA sets requirements for administering voter registration. 52 U.S.C. § 20507.

31.     Section 8(a), (c), and (d) of the NVRA includes provisions that require election officials to notify voter registration applicants of the disposition of their voter registration application, 52 U.S.C. § 20507(a)(2), and mandate that election officials send notices to certain voters before they are removed from the registration list, *id*. § 20507(c)(1)(B), (d)(1)-(2).

32.     Section 8(b) of the NVRA requires that voter list maintenance programs and activities be uniform, nondiscriminatory, and in compliance with the Voting Rights Act of 1965. 52 U.S.C. § 20507(b) (citing 52 U.S.C. § 10301).

33.    Section 8(c) of the NVRA prohibits "any program the purpose of which is to systematically remove the names of ineligible voters from the official lists of eligible voters" within 90 days of a federal election. 52 U.S.C § 20507(c)(2)(A).

34.    Section 8(d) of the NVRA strictly limits how States and their political subdivisions may remove voters from the list of eligible voters in elections for federal office because of residency changes. 52 U.S.C. § 20507(d). Section 8(d) prohibits election officials from removing such voters unless the registrant:

> (A) confirms in writing that the registrant has changed residence to a place outside the registrar's jurisdiction in which the registrant is registered; or (B)(i) has failed to respond to a notice [asking the voter to send a postage pre-paid, pre-addressed card to confirm his or her address has not changed]; and (ii) has not voted or appeared to vote . . . in an election . . . beginning on the date of the notice and ending on the day after the date of the second general election for Federal office that occurs after the date of the notice.

52 U.S.C. § 20507(d).

35.    Any state law or practice that conflicts with these requirements of the NVRA is preempted and cannot be implemented.

<u>Georgia's Voter Challenge Process Before SB 189</u>

36.    Georgia law provides processes for individuals to challenge a voter's registration and/or right to vote under O.C.G.A. §§ 21-2-229 and 21-2-230.

37.    Under O.C.G.A. § 21-2-229 ("Section 229"), any registered voter may challenge "the qualifications of any person applying to register to vote in the [same]

county or municipality . . . [or] challenge the qualifications of any [voter] of the [same] county or municipality."

38.     Under O.C.G.A. § 21-2-230 ("Section 230"), any registered voter may challenge "the right of any other [voter] of the [same] county or municipality . . . to vote in an election[.]" *Id*. § 21-2-230(a). If the challenge is based on grounds that the voter is not qualified to remain on the registration list, the individual's challenge can also serve as a challenge to the voter's registration. *Id*. § 21-2-230(g), (h), (i).

39.     Both Section 229 and Section 230 allow individuals to challenge an unlimited number of voters.

40.     The challenge process set forth in Section 229 requires boards of registrars to set a hearing and provide notice of the hearing and a copy of the challenge to the challenged voter within ten business days after a challenge is filed. The challenged voter must receive at least three days' notice of a hearing. If the board of registrars upholds a challenge, depending on the type of challenge brought under Section 229, the challenged voter's registration application will be rejected or their name will be removed from the registration list.

41.     Because the challenge process set forth in Section 230 also grants individuals the ability to challenge a voter's right to vote, it is more complex than the challenge process in Section 229.

42.     Section 230 provides that "[u]pon the filing of [a] challenge [to the right to vote], the board of registrars shall immediately consider such challenge and determine whether probable cause exists." O.C.G.A. § 21-2-230(b).

43.     If the board of registrars finds that there is probable cause in support of the challenge, the board of registrars must also notify other election officials of the probable cause finding and, if practical, notify the challenged voter and afford them an opportunity to answer the challenge.[1] *Id.*

44.     The board of registrars must then determine the challenged voter's eligibility to vote. If the board of registrars upholds a challenge because the voter is not qualified to remain on the registration list, the voter *must be removed* from the registration list and the voter's ballot, if one was cast, must be rejected. O.C.G.A § 21-2-230(g), (h), (i). Any decision by the registrar is appealable to the local superior court. O.C.G.A § 21-2-230(i).

45.     Before SB 189, Section 230 did not define "probable cause" under the statute.

<u>Voter Registration of Unhoused Persons Before SB 189</u>

46.     In Georgia, maintaining a permanent residence is not a qualification to register or to be eligible to vote. *See* O.C.G.A. § 21-2-216.

---

[1] The only situation where a challenged voter is required, under all circumstances, to be given an opportunity to appear before the board of registrars and answer a challenge is when the challenged voter appears at a polling place to vote. O.C.G.A § 21-2-230(c).

47. A person's residence under Georgia law is where their "habitation is fixed, without any present intention of removing therefrom." O.C.G.A. § 21-2-217(a)(1). A voter's residence does not change if they leave "for temporary purposes only, with the intention of returning," unless they "register to vote or perform other acts indicating a desire to change" their residence. *Id*. § 21-2-217(a)(2).

48. The determination of residence under Georgia law requires the board of registrars to consider the "applicant's expressed intent" as well as "any relevant circumstances determining the applicant's residence." O.C.G.A. § 21-2-217(b). Georgia law provides a non-exhaustive list of factors boards of registrars may consider, including:

> the applicant's financial independence, business pursuits, employment, income sources, residence for income tax purposes, age, marital status, residence of parents, spouse, and children, if any, leaseholds, sites of personal and real property owned by the applicant, [and] motor vehicle and other personal property registration.

*Id.*

49. Georgia law also prescribes certain "rules" to determine the residence of a person registering to vote. O.C.G.A. § 21-2-217(a). One of those rules provides that "the board of registrars . . . may consider evidence of where the person receives significant mail such as personal bills and other evidence that indicates where the person resides." O.C.G.A. § 21-2-217(a)(15).

50.     Many unhoused voters who lack a permanent address reside at what may be deemed as nonresidential addresses, such as a park or sidewalk.

51.     On a bi-annual basis, the Georgia Department of Community Affairs conducts a point-in-time assessment of the number of unhoused people residing in Georgia. As of the last reported statewide count conducted in February 2022, there were 10,689 people experiencing homelessness in the State—5,535 unsheltered and 5,154 residing in shelters providing temporary living arrangements. Approximately 21 percent of these individuals resided in Atlanta or Fulton County, 5 percent resided in Chatham County, and 4 percent resided in Macon-Bibb County.

52.     Every voter registration applicant must provide an address when registering to vote.  Unhoused individuals without a permanent address can identify the physical location at which they are staying, such as a homeless shelter or a local park, as their residential address.

53.     All voter registration applicants have the option of identifying a separate, second address, called their mailing address, when they register to vote.  Until the passage of SB 189, all voters had the option of identifying the mailing address that was most convenient for them.

54.     Unhoused voters in Georgia who lack a permanent address often use a post office box, homeless shelter, or social service agency as their mailing address.

<u>Georgia Enacts SB 189</u>

55.    The Georgia Legislature enacted SB 189 despite staunch opposition from minority legislators, Secretary Raffensperger's office, and other election officials. Many legislators opposed the bill stating that it would enable baseless voter challenges, overwhelm election administrators, and disenfranchise eligible voters.

56.    During a March 28, 2024, debate on SB 189 on the floor of the House of Representatives, statements made by a bill proponent, Representative Victor Anderson, and by a bill opponent, Representative Park Cannon, evince a common understanding that Section 4 applies broadly to unhoused voters in Georgia.

57.    During the March 28, 2024, debate, Representative Cannon raised concerns that Section 4 would disenfranchise unhoused voters, at one point asking rhetorically, "How does that make sense that everyone in Fulton County who is unhoused would put the government center's address?  It just simply does not make sense."

58.    Responding to those comments, among others, Representative Anderson then spoke in support of SB 189, saying "[w]e just had some discussion about Section 4 regarding the homeless. Section 4 provides a mechanism for the homeless to actually have the opportunity to vote. That has been left up to local jurisdictions up to this point. We're defining that in code."

59.     Governor Brian Kemp signed SB 189 into law on May 6, 2024.

<u>SB 189's Changes to Georgia's Voter Challenge Provisions</u>

19

60.    SB 189 inserts, for the first time, provisions into Section 230 that define what constitutes "probable cause" for removing challenged voters from the registration list in Georgia. O.C.G.A. § 21-2-230(b).

61.    Among other things, Section 5 of SB 189, which became effective July 1, 2024, states that:

> probable cause shall include . . . [a voter] voting or registering to vote in a different jurisdiction; [a voter] obtaining a homestead in a different jurisdiction; or [a voter] being registered at a nonresidential address as confirmed or listed by or in a government office, data base, website, or publicly available sources derived solely from such governmental sources.

O.C.G.A. § 21-2-230(b).

62.    Section 5 of SB 189 also provides that the registrars can consider whether "a challenged [voter's] name appears on the National Change of Address data base . . . as having changed such [voter's] residence to a different jurisdiction" but that the "presence of such [voter's] name on such data base shall be insufficient" to sustain a challenge without additional evidence that the voter has lost his or her residency. O.C.G.A. § 21-2-230(b).

63.    Section 5 of SB 189 further provides that the "board of registrars shall immediately consider such challenge[s] and determine whether probable cause exists" but that "any challenge of an elector within 45 days of a primary, run-off primary, election, or run-off election shall be postponed until the certification of such primary, election, or runoff is completed." O.C.G.A. § 21-2-230(b)(1).

<u>Voter Challenges in Georgia from 2022 to Present</u>

64.    Since 2022, hundreds of thousands of Georgia voters have had their eligibility to vote challenged. In response to these challenges, election officials in Chatham, Forsyth, Gwinnett, and Spalding Counties have improperly removed voters in violation of the NVRA.

65.    The Chatham County Defendants removed numerous voters following a series of mass voter challenges filed by individuals in 2023 and 2024. Chatham County Defendants removed challenged voters from the rolls during a hearing held on January 24, 2024, which is within 90 days of Georgia's March 12, 2024, presidential preference primary election. Ex. 2.

66.    In 2023, the Chatham County Defendants also upheld voter challenges brought by the City of Tybee Island, a municipality not allowed under state law to bring such challenges, against the City's own voters. Ex. 3.

67.    In Spalding County, individuals have challenged voter registrations for several reasons, including changes of residency. One individual challenged 94 voters based on allegations of a change of residency and, at an August 9, 2022, hearing, the Spalding County Defendants voted to remove all 94 voters. Ex. 4.

68.    At an April 17, 2023, hearing, the Gwinnett County Defendants upheld challenges to over 50 voters and directed that they be removed from the registration

list. The challenges were made approximately a couple of months before the hearing. Ex. 5.

69.     Similarly, in Forsyth County, one citizen challenged over 1,000 voters in 2023 based on residency and was successful in having the Forsyth County Defendants remove over 900 of the challenged voters from the registration list over the course of a series of challenge hearings. Ex. 6. One of those challenge hearings was held on March 5, 2024, which is within 90 days of Georgia's March 12, 2024, presidential preference primary election. Ex. 7.

70.     Earlier this year, the Macon-Bibb County Board of Elections received challenges to 45 voters from one individual. The 45 challenged voters provided either a post office or UPS store location as their residence address when they registered to vote.

71.     On July 1, 2024, the day Section 5 of SB 189 went into effect, Macon-Bibb County Defendants deliberated on the challenges and placed all 45 of those voters into "challenged status." This means that the 45 voters must provide proof of residency to Macon-Bibb County election officials before they are allowed to vote in any future election. Under "challenged status," the 45 voters will undergo the rest of the voter challenge process laid out in Georgia law, which puts them in substantial risk of removal from the registration list and/or disenfranchisement.

72.     The use of a post office address was the sole reason cited by the Macon-Bibb County Defendants for placing the 45 voters into challenged status.

73.     In fact, Macon-Bibb County Defendants rejected a separate set of voter challenges made by the same individual alleging that voters had moved out of Macon-Bibb County.

74.     According to news reports, the same individual has publicly promised to challenge the eligibility of additional Macon-Bibb County voters in the future.

75.     Under Georgia's VoteSafe program, individuals who have been, or may be, subject to acts of family violence or stalking or who currently reside in a family violence shelter may register to vote using a post office box to protect their privacy.

76.     SB 189 contains no exemptions for participants in Georgia's VoteSafe program.

<u>SB 189's Changes to Voter Registration for Unhoused Individuals</u>

77.     Section 4 of SB 189, which will become effective January 1, 2025, provides that "the mailing address for election purposes of any person of this state who is homeless and without a permanent address shall be the registrar's office of the county in which a person resides."

78.     By requiring that the mailing address for unhoused people without a permanent address must be the address of their registrar's office, SB 189 makes it

much harder for many unhoused voters without a permanent address to receive official election-related communications.

79.    Unhoused voters without a permanent address like, for example, someone who registers using a park bench as their residential address and a social service agency as their mailing address, would need to go to the county registrar's office to obtain basic information, such as notice of a change in the voter's polling location, an absentee ballot application, a voter guide, or other election notices and documents.

80.    SB 189, for example, makes it harder for unhoused voters without a permanent address to receive and respond to NVRA confirmation mailings. The failure to respond to such mailings can result in voters being moved to inactive status or removed from the registration list.

81.    Many unhoused voters without a permanent address who live far from their county registrar's office and do not have access to transportation will now, as a practical matter, be unable to access election mail under Section 4 of SB 189.

82.    As noted above, approximately 21 percent of individuals experiencing homelessness in Georgia resided in Atlanta or Fulton County, 5 percent resided in Chatham County, and 4 percent resided in Macon-Bibb County.

**CAUSES OF ACTION**

83.     Plaintiffs have a private right of action under the NVRA. Plaintiffs must "provide written notice of . . . violation[s] to the chief election official of the State involved." 52 U.S.C. § 20510(b)(1).

84.     Defendants received notice of these violations on July 8, 2024, 120 days before the Presidential Election on November 5, 2024, and failed to correct them within 20 days of receiving that notice. *See* Ex. 1.

**COUNT I**
Residency-Based Probable Cause Provisions of Section 230 Violate the NVRA's
Residency-Based Removal Process
(All Defendants)
*52 U.S.C. § 20507(d)*

85.     The probable cause criteria used to determine voter eligibility when an individual is challenged under Section 230, as amended by Section 5 of SB 189, now include the following: (1) voting or registering to vote in a different jurisdiction; (2) obtaining a homestead exemption in a different jurisdiction; and (3) appearing on the National Change of Address database, as maintained by the United States Postal Service, in combination with additional evidence indicating that the challenged voter has lost their residency.

86.     Applying these criteria forces County Defendants and other election officials to find probable cause and make determinations on voter challenges based on allegations that individuals moved from their address of registration. County

Defendants will remove voters from the registration list based on allegations they moved, and, if they have voted, reject their ballots without (i) receiving written confirmation from the voter confirming the change in residence; or (ii) providing proper notice to voters regarding County Defendants' intention to remove them from the registration list; and (iii) waiting for two federal election cycles of voter inactivity to pass before removing them from the registration list.

87.    As a result of the residency-based probable cause criteria contained in Section 5 of SB 189, Georgia's statewide voter registration database, maintained by Secretary Raffensperger in his role as the state's chief election official, will not be accurate as required by the NVRA. The NVRA mandates that voters who have moved remain on the registration list for at least two federal election cycles after receiving a confirmation notice unless they confirm in writing that they have moved out of the jurisdiction.

88.    Without promulgating rules and regulations interpreting Section 5 of SB 189 in compliance with the NVRA, SEB Defendants fail to obtain uniformity in the practices of registrars responding to voter challenges, as required by law. Further, counties and municipalities, including County Defendants, are at risk of being sanctioned by SEB Defendants if they fail to comply with their obligation under state law to apply the probable cause criteria set forth under Section 230.

## COUNT II
### Chatham, Forsyth, Gwinnett, and Spalding County Defendants' Voter Removal Practices Violate the NVRA's Requirements for Processing Voters Who Move
*52 U.S.C. § 20507(d)*

89.   The NVRA prohibits removal based on a change of residence unless the registered voter either: (1) confirms the change of residence in writing; or (2) fails to respond to a confirmation notice, the contents and manner of mailing of which are prescribed by the NVRA, and fails to vote during the next two general federal election cycles after receiving the notice. 52 U.S.C. § 20507(d).

90.   In violation of 52 U.S.C.§ 20507(d), Chatham, Forsyth, Gwinnett, and Spalding County Defendants are engaged in an ongoing practice of immediately removing voters from the registration list on the ground of an alleged change of address without (i) receiving written confirmation from the voter confirming the change in residence; or (ii) providing proper notice to voters regarding each county's intention to remove them from the registration list; and (iii) waiting for two federal election cycles of voter inactivity to pass before removing them from the registration list.

## COUNT III
### SB 189 Section 4's Unhoused Voter Mailing Address Restriction Violates the NVRA's Notice Requirements
### (State Defendants, Chatham, Fulton, and Macon-Bibb County Defendants)
*52 U.S.C. § 20507(a)(2), (c)(1)(B), (d)(1)-(2)*

91.   Section 8 of the NVRA requires that election officials notify voter registration applicants of the disposition of their voter registration application, 52

U.S.C. § 20507(a)(2), and mandates that election officials send notices to certain voters before they are removed from the voter registration list. *Id*. § 20507(c)(1)(B), (d)(1)-(2).

92.    In Georgia, county registrars mail each voter a registration card, often called a precinct card, after they have successfully registered to vote. County registrars also send a notice letter to individuals whose voter registration applications have been denied.

93.    County registrars send a notice including a postage prepaid and pre-addressed return card, sent by forwardable mail, on which the registrant may state his or her current address, before moving voters who have allegedly moved from their address of registration to inactive status and initiating the list maintenance process. This notice is often called a "confirmation notice."

94.    Unhoused voters lacking a permanent address who cannot travel to their county registrar's office cannot access these notices, including those to which that they are legally entitled under the NVRA.

95.    That is because O.C.G.A. § 21-2-217(a), as amended by Section 4 of SB 189, requires unhoused voters without a permanent address to use their county registrar's office as their mailing address for voting purposes. County Defendants are prohibited from sending out notices to any other address for these voters;

unhoused voters who do not have a permanent address must travel to the registrar's office to receive their notices.

**COUNT IV**
<u>SB 189 Section 4's Unhoused Voter Mailing Address Restriction Violates the
NVRA's Uniform and Nondiscriminatory Provision
(State Defendants, Chatham, Fulton, and Macon-Bibb County Defendants)</u>
*52 U.S.C. § 20507(b)*

96.     Section 8(b) of the NVRA provides that "[a]ny State program or activity to protect the integrity of the electoral process . . . shall be uniform, nondiscriminatory, and in compliance with the Voting Rights Act of 1965." 52 U.S.C. § 20507(b)(1).

97.     SB 189 Section 4's unhoused voter mailing address restriction, which amends O.C.G.A. § 21-2-217(a), violates Section 8(b) of the NVRA. Section 4 of SB 189 explicitly identifies and places unnecessary, discriminatory, and unreasonable requirements solely on unhoused voters without a permanent address by restricting their mailing address for election purposes to their county registrar's office. No other voters are subject to this restriction. Nor are any other voters subjected to having their election mail involuntarily directed to a location other than where they receive their other mail. Section 4 of SB 189 also refers to voters lacking a "permanent address." Ambiguity regarding the meaning of this phase creates a risk of arbitrary implementation from county to county and the risk that the mailing address restriction could be potentially applied to any unhoused voter.

98.     Macon-Bibb County Defendants have violated Section 8(b) of the NVRA by placing unnecessary, discriminatory, and unreasonable requirements on voters with a nonresidential address. On the day that Section 5 of SB 189 became effective, Macon-Bibb County Defendants placed 45 voters into "challenged status" solely for having a post office or UPS store location as their residential address. Unlike other voters, these 45 voters will have to provide proof of residency before being able to vote in any future election. The mere fact that these voters used a post office address was deemed sufficient grounds to impose this requirement. These actions particularly place unhoused voters and voters with insecure housing in Macon-Bibb County at risk of being subjected to additional registration requirements and/or being removed from the registration list entirely in the future. Macon-Bibb County's interpretation of Section 230's residential address requirement is, on information and belief, not based on an individualized inquiry into the unique circumstances facing each challenged voter and is out of step with other Georgia counties that have received similar types of voter challenges from private citizens.

**COUNT V**
<u>SB 189 Section 4 Violates Unhoused Voters' Fundamental Right to Vote</u>
<u>(Georgia State Election Board, Chatham, Fulton, Macon-Bibb County Defendants)</u>
*42 U.S.C. § 1983, First and Fourteenth Amendments to the U.S. Constitution*

99.     SB 189 Section 4's unhoused voter mailing address restriction burdens the fundamental right to vote of unhoused voters without a permanent address by

restricting their address for election mail to their county registrar's office, instead of the mailing address of their choice, or where they receive their other mail.

100.   Voters receive, at times, various notices and documents from County Defendants or other election officials, including precinct cards, confirmation notices, and notifications of a polling place change, as well as, if requested, an absentee ballot application.

101.   Section 4 of SB 189 imposes discriminatory, arbitrary, and unjustified burdens on unhoused voters without a permanent address, particularly those who lack the means to travel to their county registrar's office to obtain their election mail.

102.   There is no legitimate state interest in restricting the mailing address of unhoused voters without a permanent address so narrowly to their county registrar's office. The restriction requires Defendants to violate federal obligations to send out election mail.

103.   By solely targeting unhoused voters without a permanent address in this way, Defendants burden their rights in violation of the First and Fourteenth Amendments to the U.S. Constitution.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

a.      Enter a declaratory judgment that O.C.G.A. § 21-2-230 violates Section 8(d) of the NVRA because it creates a regime for removing challenged voters from

the registration list based on an allegation that they moved from their address of registration without (i) receiving written confirmation from the voter confirming the change in residence; or (ii) requiring proper notice to voters; and (iii) waiting for two federal election cycles of voter inactivity to pass before removing them from the registration list;

b.      Enter a declaratory judgment that Chatham, Forsyth, Gwinnett, and Spalding County Defendants have violated Section 8(d) of the NVRA by removing voters on the basis that they allegedly moved from their address of registration without written confirmation of change in address or without providing confirmation notices and waiting two federal election cycles;

c.      Enter a declaratory judgment that O.C.G.A. § 21-2-217(a) violates Section 8(b) of the NVRA and the First and Fourteenth Amendments to the U.S. Constitution by restricting the address that unhoused voters without a permanent address can use for election mail to their county registrar's office;

d.      Enter a declaratory judgment that Macon-Bibb County Defendants violated Section 8(b) of the NVRA when they removed voters from the registration list based on challenges alleging that they registered to vote using nonresidential addresses;

e.      Grant Plaintiffs permanent injunctive relief:

i.   prohibiting all Defendants from removing voters from the registration list under O.C.G.A. § 21-2-230 based on allegations that the voters moved from their address of registration without (i) receiving written confirmation from the voter confirming the change in residence; or (ii) requiring proper notice to voters regarding County Defendants' intention to remove them from the registration list; and (iii) waiting for two federal election cycles of voter inactivity to pass;

ii.  prohibiting the Chatham, Forsyth, Gwinnett, and Spalding County Defendants from removing voters from the registration list based on a change in residency without (1) receiving written confirmation of change in address or (2) providing proper notice and waiting two federal election cycles;

iii. ordering Secretary Raffensperger and the Chatham, Forsyth, Gwinnett, and Spalding County Defendants to restore voters to the registration list who have been improperly removed from the rolls due to adjudications of residency-based challenges;

iv.  ordering Macon-Bibb County Defendants to restore voters to the registration list who have been improperly removed from the rolls due to their adjudications of challenges alleging that the voter lives

at a nonresidential address and to cease from undertaking any simi-

larly discriminatory voter removals in the future;

v.   ordering all Defendants to maintain, preserve, and not destroy until

after December 31, 2026, any and all records relating to all list-

maintenance programs that have resulted in challenges to voter eli-

gibility based upon residency changes or nonresidential address;

vi.   prohibiting SEB Defendants from adopting revised rules, regula-

tions, and procedures for processing and adjudicating challenges to

voters' eligibility that are inconsistent with Section 8(d) of the

NVRA;

vii.   prohibiting State and Chatham, Fulton, and Macon-Bibb County

Defendants from implementing portions of O.C.G.A. § 21-2-217(a)

that restrict the address unhoused voters without a permanent ad-

dress can use for election mail to their county registrar's office;

viii.   prohibiting County Defendants from failing to count all ballots, in-

cluding provisional ballots, cast by voters removed from the regis-

tration list pursuant to voter challenges in violation of the NVRA;

ix.   prohibiting SEB Defendants from failing to adopt revised rules, reg-

ulations, and procedures for processing the election mail of

34

unhoused voters without a permanent address that comply with the NVRA and the United States Constitution;

f.      Awarding Plaintiffs their reasonable attorneys' fees, litigation expenses, and costs incurred in connection with this action, pursuant to 52 U.S.C. § 20510(c) and 42 U.S.C. § 1988;

g.      Retaining jurisdiction over this action to ensure that Defendants comply with any order(s) issued by this Court; and

h.      Granting such additional relief as the Court deems just and proper.

Respectfully submitted this 31st day of July, 2024.


*/s/ Bryan L. Sells*
Bryan L. Sells
Georgia Bar No. 635562
**THE LAW OFFICE OF BRYAN L. SELLS, LLC**
P.O. Box 5493
Atlanta, GA 31107
Tel: (404) 480-4212
Email: bryan@bryansellslaw.com

John Powers*
Hani Mirza*
Matthew A. Fogelson*
**ADVANCEMENT PROJECT**
1220 L Street Northwest, Suite 850
Washington, DC 20005
(415) 238-0633
jpowers@advancementproject.org
hmirza@advancementproject.org
mfogelson@advancementproject.org

John A. Freedman*

Jonathan L. Stern*
Rachel L. Forman*
Jeremy Karpatkin*
**ARNOLD & PORTER KAYE SCHOLER LLP**
601 Massachusetts Ave. N.W.
Washington, DC  20001
(202) 942-5000
john.freedman@arnoldporter.com
jonathan.stern@arnoldporter.com
rachel.forman@arnoldporter.com
jeremy.karpatkin@arnoldporter.com

Michael A. Rogoff*
**ARNOLD & PORTER KAYE SCHOLER LLP**
250 West 55th Street
New York, NY 10019
(212) 836-8000
michael.rogoff@arnoldporter.com

*pro hac vice* application forthcoming