# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

|   |   |
|---|---|
| NEW GEORGIA PROJECT and A. PHILLIP RANDOLPH INSTITUTE,<br><br>*Plaintiffs*,<br><br>v.<br><br>BRAD RAFFENSBERGER, in his official capacity as Georgia Secretary of State, et al.,<br><br>*Defendants*. | No. 1:24-cv-03412 |

## **MOTION TO INTERVENE**

The Republican National Committee (RNC) and the Georgia Republican Party, Inc. (GAGOP) move to intervene as defendants in this case. The last time New Georgia Project challenged state election laws in this Court, the RNC and GAGOP successfully intervened. *New Ga. Project v. Raffensperger*, Doc. 39, No. 1:21-cv-1333 (N.D. Ga. June 4, 2021). In fact, in recent challenges to Georgia's election laws, this Court has always allowed political committees—including the same Movants here—to intervene to protect their interests in the rules governing Georgia's elections.[1] Movants are unaware of any ruling in the

---

[1] *E.g.*, *Int'l All. of Theater Stage Emps. Local 927 v. Lindsey*, Doc. 84, No. 1:23-cv-4929 (N.D. Ga. May 3, 2024) (granting intervention to the RNC and GAGOP); *United States v. Georgia*, Minute Order, No. 1:21-cv-2575 (N.D. Ga. July 12, 2021) (granting intervention to the RNC, NRSC, NRCC, and GAGOP); *Coal. for Good Governance v. Raffensperger*, Minute Order, No. 1:21-cv-2070 (N.D. Ga. June 21, 2021); *Concerned Black Clergy of Metro. Atlanta v. Raffensperger*, Minute Order, No. 1:21-cv-1728 (N.D. Ga. June 21, 2021); *Sixth Dist. of the African Methodist Episcopal Church v. Kemp*, Minute Order, No. 1:21-cv-1284 (N.D. Ga. June 4, 2021); *Ga. State Conf. of NAACP v. Raffensperger*, Doc. 40, No. 1:21-cv-1259 (N.D. Ga. June 4, 2021); *Vote Am. v. Raffensperger*, Doc. 50, No. 1:21-cv-1390 (N.D. Ga. June 4, 2021); *Asian Ams. Advancing Justice-Atlanta v. Kemp*, Doc. 39, No. 1:21-cv-1284 (N.D. Ga. June 4, 2021);

Northern District of Georgia denying any political party intervention in a case challenging state election law. That's unsurprising, as political parties "brin[g] a unique perspective" to these cases, which is why courts routinely let them intervene "in actions challenging voting laws." *Democratic Party of Va. v. Brink*, 2022 WL 330183, at *2 (E.D. Va. Feb. 3, 2022).[2] The Court should grant the motion for two independent reasons.

*First*, Movants satisfy Rule 24(a)(2)'s standard for intervention as of right. Their motion is timely because Plaintiffs filed their complaint just two weeks ago, the defendants have not yet entered appearances, and no party will be prejudiced. Movants also have clear interests in protecting their candidates, voters, and resources from Plaintiffs' attempt to invalidate Georgia's duly enacted election rules. And no other party adequately represents Movants' distinct interests in helping Republican candidates and voters.

---

*Wood v. Raffensperger*, Doc. 14, No. 1:20-cv-5155 (N.D. Ga. Dec. 28, 2020) (order granting intervention to the Democratic Party of Georgia and the DSCC); *Black Voters Matter Fund v. Raffensperger*, Doc. 42, No. 1:20-cv-4869 (N.D. Ga. Dec. 9, 2020).

[2] *E.g.*, *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 309 (5th Cir. 2022) (reversing the district court's denial of the Republican committee's motion to intervene as of right); *League of Women Voters of Ohio v. LaRose*, Doc. 25, No. 1:23-cv-2414 (N.D. Ohio Feb. 6, 2024) (granting intervention to RNC and Ohio GOP); *Mont. Pub. Int. Rsch. Grp. v. Jacobsen*, Doc. 34, No. 6:23-cv-70 (D. Mont. Jan. 18, 2024) (granting intervention to RNC and Montana GOP); *Vote.org v. Byrd*, Doc. 85, No. 4:23-cv-111 (N.D. Fla. May 26, 2023); *RNC v. Chapman*, 447 M.D. 2022 (Pa. Common. Ct. Sept. 29, 2022) (granting intervention to various Democratic political committees); *DNC v. Hobbs*, Doc. 18, No. 2:22-cv-1369 (D. Ariz. Aug. 24, 2022); *Mi Familia Vota v. Hobbs*, Doc. 53, No. 2:21-cv-1423 (D. Ariz. Oct. 4, 2021); *League of Women Voters of Fla. v. Lee*, Doc. 72, No. 4:21-cv-186 (N.D. Fla. June 4, 2021); *Swenson v. Bostelmann*, Doc. 38, No. 20-cv-459 (W.D. Wis. June 23, 2020); *DNC v. Bostelmann*, 2020 WL 1505640, at *5 (W.D. Wis. Mar. 28, 2020); *Gear v. Knudson*, Doc. 58, No. 3:20-cv-278 (W.D. Wis. Mar. 31, 2020); *Pavek v. Simon*, Doc. 96, No. 19-cv-3000 (D. Minn. July 12, 2020); *Ariz. Democratic Party v. Hobbs*, Doc. 60, No. 2:20-cv-01143 (D. Ariz. June 26, 2020); *League of Women Voters of Minn. Ed. Fund v. Simon*, Doc. 52, No. 20-cv-1205 (D. Minn. June 23, 2020); *Nielsen v. DeSantis*, Doc. 101, No. 4:20-cv-236 (N.D. Fla. May 28, 2020); *Priorities USA v. Nessel*, 2020 WL 2615504, at *5 (E.D. Mich. May 22, 2020); *Thomas v. Andino*, 2020 WL 2306615, at *4 (D.S.C. May 8, 2020).

*Second*, in the alternative, the Court should grant Movants permissive intervention under Rule 24(b). As stated above, this motion is timely. Movants' defenses share common questions of law and fact with the existing parties and claims, and intervention will result in no delay or prejudice. The Court's resolution of the important questions in this case will have significant implications for Movants as they work to ensure that candidates and voters can participate in fair and orderly elections.

Whether under Rule 24(a)(2) or (b), Movants should be allowed to intervene as defendants. Judges in this Court often grant these Movants permissive intervention under Rule 24(b), absolving the need to address intervention as of right under Rule 24(a). Movants maintain that they have a right to intervene under Rule 24(a), but they do not object to that efficient resolution here.

## INTERESTS OF PROPOSED INTERVENORS

The Republican National Committee is a national committee as defined by 52 U.S.C. §30101. It manages the Republican Party's business at the national level, supports Republican candidates for public office at all levels, including in Georgia, coordinates fundraising and election strategy, and develops and promotes the national Republican platform. The Georgia Republican Party is a political party in Georgia that works to promote Republican values and to assist Republican candidates in obtaining election to partisan federal, state, and local office. Both Movants have interests—their own and those of their members—in the rules and procedures governing Georgia's elections. That includes Georgia's upcoming elections in 2024 for federal and state office.

## ARGUMENT

**I.  Movants are entitled to intervene as of right.**

Rule 24 "should be liberally construed," *Clark v. Sandusky*, 205 F.2d 915, 919 (7th Cir. 1953), and "[a]ny doubt concerning the propriety of allowing intervention should be resolved in favor of the proposed intervenors," *Fed. Sav. & Loan Ins. v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 216 (11th Cir. 1993). This rule of construction "serves both efficient resolution of issues and broadened access to the courts." *United States v. City of Los Angeles*, 288 F.3d 391, 397-98 (9th Cir. 2002).

Under Rule 24(a)(2), this Court "must allow" intervention as of right if four things are true: (1) the motion is timely; (2) movants have a legally protected interest in this action; (3) this action may impair or impede that interest; and (4) no existing party adequately represents Movants' interests. *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989). Movants satisfy all four elements.

**A.  The motion is timely.**

This Court considers four factors in determining the timeliness of a motion to intervene: the delay after the movants knew their interests in the case; any prejudice to the existing parties from that delay; prejudice to the movants from denying intervention; and any unusual circumstances. *Id.* These factors all favor Movants.

Movants filed their motion rapidly. Plaintiffs filed their lawsuit on July 31, and no Defendant has appeared in this case yet. That the Court has not yet taken "significant action," *Georgia v. U.S. Army Corps of Eng'rs*, 302 F.3d 1242,

4

1259-60 (11th Cir. 2002), and "no substantive proceedings have taken place," *Ga. Aquarium, Inc. v. Pritzker*, 309 F.R.D. 680, 684 n.6 (N.D. Ga. 2014), further confirms the motion is timely. And much later intervention motions have been declared timely. *See e.g.*, *id.* (motion filed over three months after complaint was filed); *Snadon v. SEW-Eurodrive, Inc.*, 2020 WL 13544217, at *1 (N.D. Ga. Nov. 4, 2020) (Grimberg, J.) (motion filed ten months after case removed to federal court was "not untimely"); *U.S. Army Corps of Eng'rs*, 302 F.3d at 1259 (motion filed six months after complaint and "discovery was largely complete"); *Davis v. BancInsure, Inc.*, 2013 WL 1226491, at *2 (N.D. Ga. Mar. 18, 2013) (motion filed four and a half months after complaint and the parties had already fully briefed motions for summary judgment); *North Dakota v. Heydinger*, 288 F.R.D. 423, 429 (D. Minn. 2012) (motion filed one year after answer).

Nor will Movants' intervention prejudice the parties. This litigation has not yet begun in earnest. No party has filed any briefs or dispositive motions, Defendants have not filed any responsive pleadings, and this Court has not issued any substantive rulings. Movants will comply with all deadlines that govern the parties, will work to prevent duplicative briefing, and will coordinate with the parties on discovery. If Movants are not allowed to intervene, however, their interests could be irreparably harmed by an order overriding Georgia's election rules and undermining the integrity of Georgia's elections. There are no unusual circumstances. Movants are filing at the earliest possible opportunity. Their motion is timely.

### B. Movants have protected interests in this action.

Movants interests fall squarely within Rule 24. As this Court has held before, Movants have "a specific interest" in "promoting their chosen candidates and protecting the integrity of Georgia's elections." *Black Voters Matter Fund v. Raffensperger*, Doc. 42 at 5, No. 1:20-cv-4869 (N.D. Ga. Dec. 9, 2020). Specifically, Movants have at least four "direct, substantial, legally protectible interest[s] in the proceeding." *Chiles*, 865 F.2d at 1213-14 (citation omitted).

*First*, Movants have a specific interest in accurate voter-registration lists. As political committees, Movants rely on voter-registration lists to determine their electoral strategies, the number of staff they need in a given jurisdiction, the number of volunteers needed to contact voters, and how much they spend on paid voter contacts. If this Court were to enjoin Georgia's list-maintenance rules, Movants would need to divert resources from other mission-critical activities, such as voter-turnout and voter-registration efforts, to counteract the injunction against list-maintenance procedures. The Plaintiffs invoke similar interests in support of their standing to file this lawsuit. *See* Compl. (Doc. 1) ¶¶14, 18 (suing to protect "core voting and advocacy related activities" such as "voter registration" and "get out the vote efforts"). If those interests are sufficient to support Plaintiffs' standing, they are sufficient to satisfy the Rule 24(a) interest requirement. *See Chiles*, 865 F.2d at 1213. As a result of similar effects on organizational activities, courts routinely grant the Republican Party's requests for intervention. *E.g.*, *Siegel v. LePore*, 234 F.3d 1163, 1169 n.1 (11th Cir. 2001).

*Second*, Movants have "a direct and substantial interest in the proceedings" because they "affect the [Movants'] ability to participate in and maintain

6

the integrity of the election process in [Georgia]." *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 306 (5th Cir. 2022). Laws like the one Plaintiffs challenge here serve "the integrity of [the] election process," *Eu v. S.F. Cty. Democratic Cent. Comm.*, 489 U.S. 214, 231 (1989), and the "orderly administration" of elections, *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 196 (2008) (op. of Stevens, J.). This is particularly important because voters are more likely to vote and more likely to trust the outcome of the elections when voters see that elections are safe and secure. Indeed, federal courts "routinely" find that political parties have interests that support intervention in litigation regarding election rules. *Issa v. Newsom*, 2020 WL 3074351, at *3 (E.D. Cal. June 10, 2020); *see also Siegel v. LePore*, 234 F.3d 1163, 1169 n.1 (11th Cir. 2001).

*Third*, political parties have inherent interests in the rules that govern the elections in which they participate. "[I]n cases challenging various statutory schemes as unconstitutional or as improperly interpreted and applied, the courts have recognized that the interests of those who are governed by those schemes are sufficient to support intervention." *Chiles*, 865 F.2d at 1214 (citation omitted). Indeed, given their inherent interest in elections, usually "[n]o one disputes" that political parties "meet the impaired interest requirement for intervention as of right." *Citizens United v. Gessler*, 2014 WL 4549001, *2 (D. Col. Sept. 15, 2014).

Election rules affect political parties most of all. Parties and their voters must comply with rules such as the voter list maintenance program that Plaintiffs seek to change with this lawsuit. They must ensure their candidates, members, and voters are informed of those rules and have the resources to

7

comply. And—a critical point for federal lawsuits—they must work quickly to respond to sudden, court-ordered changes to those rules in the lead up to an election. *See Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006). Where, as here, "changes in voting procedures could affect candidates running as Republicans and voters who [are] members of the … Republican Party" there is "no dispute that the … Republican Party ha[s] an interest in the subject matter of this case." *Ohio Democratic Party v. Blackwell*, 2005 WL 8162665, *2 (S.D. Ohio Aug. 26, 2005).

*Fourth*, all of this regulation, compliance, and education doesn't come cheap. Every election cycle, party organizations like Movants "expend significant resources" on the election process—a process that the challenged laws "unquestionably regulat[e]." *La Union del Pueblo Entero*, 29 F.4th at 305. The Plaintiffs challenge Georgia's list-maintenance rules and the practice of delivering election mail to the homeless at the county registrar's office. *See* Compl. ¶1. Movants rely on accurate voter-registration lists for a variety of their activities. *See supra*, pp. 6-7. Movants' success also depends on their ability to reach voters quickly and accurately with election-related communications. Those activities cost money. Safeguarding Movants' mission-critical activities from costs associated with sudden court-ordered changes in election procedures is a legitimate "interest" under Rule 24(a)(2). *E.g., Issa*, 2020 WL 3074351, at *3; *Bldg. & Realty Inst. of Westchester & Putnam Ctys., Inc. v. New York*, 2020 WL 5658703, at *11 (S.D.N.Y. 2020).

In short, if Plaintiffs have standing to bring this lawsuit, then Movants have an interest in defending against this lawsuit. *See Chiles*, 865 F.2d at 1213

("a party seeking to intervene need not demonstrate that he has standing in addition to meeting the requirements of Rule 24"). For these reasons, this Court has recognized that Movants have "significant interests at stake" in cases like this one. *New Ga. Project*, Doc. 39, No. 1:21-cv-1333 (N.D. Ga.).

### C. This action threatens to impair Movants' interests.

Going forward without Movants would "impair" their interests. Fed. R. Civ. P. 24(a)(2). Movants "do not need to establish that their interests *will* be impaired." *Brumfield v. Dodd*, 749 F.3d 339, 344 (5th Cir. 2014). Instead, they must show "only that the disposition of the action 'may' impair or impede their ability to protect their interests." *Id.* This language from Rule 24 is "obviously designed to liberalize the right to intervene in federal actions." *Nuesse v. Camp*, 385 F.2d 694, 701 (D.C. Cir. 1967).

Here, Movants' interests will plainly "suffer if the Government were to lose this case, or to settle it against [Movants'] interests." *Mausolf v. Babbitt*, 85 F.3d 1295, 1302-03 (8th Cir. 1996). Not only would an adverse decision undercut democratically enacted laws that protect voters and candidates (including Movants' members), *Frank v. Walker*, 768 F.3d 744, 751 (7th Cir. 2014), but it would also "change the entire election landscape for [Movants'] members and volunteers," thereby "chang[ing] what [Movants] must do to prepare for upcoming elections," *La Union*, 29 F.4th at 307; *see also Shays*, 414 F.3d at 85-86. That alone satisfies the impaired interest requirement. *La Union*, 29 F.4th at 307; *Shays*, 414 F.3d at 85-86.

More concretely, granting Plaintiffs' requested relief will result in more ineligible voters remaining on the rolls, which impairs Movants' interests in

9

accurate registration lists. *See supra*, pp. 6-7. The Plaintiffs disagree—they claim that "[a]s a result of the residency-based probable cause criteria contained in Section 5 of SB 189, Georgia's statewide voter registration database … will not be accurate as required by the NVRA." Compl. (Doc. 1) ¶87. But the opposite is true. Georgia's law ensures that election officials have the necessary tools to maintain accurate voter rolls. Enjoining enforcement of those tools on the eve of the election inhibits the State's obligation to "ensure that voter registration records in the State are accurate and are updated regularly," which includes a "reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters." 52 U.S.C. §21083(a)(4). Though the Plaintiffs disagree, the Court cannot "assume … that Plaintiffs will ultimately prevail on the merits" or prejudge "the ultimate merits of the [defenses] which the intervenor wishes to assert." *Pavek v. Simon*, 2020 WL 3960252, at *3 (D. Minn. July 12, 2020). In other words, Movants and Plaintiffs have similar *interests* at stake, they just disagree on the merits of how this challenge affects those interests.

To defend against these electoral harms, Movants will also be forced to spend substantial resources fighting inevitable confusion and galvanizing participation in the wake of the "consequent incentive to remain away from the polls." *Purcell*, 549 U.S. at 4-5; *accord Pavek*, 2020 WL 3183249, at *10. Those pocketbook costs are an independent injury. And "as a practical matter," Fed. R. Civ. P. 24(a)(2), this proceeding might be the only time that Movants can litigate Plaintiffs' claims. This Court's decision could be the final word on the laws governing the next election. Because the "very purpose of intervention is

to allow interested parties to air their views … before making potentially adverse decisions," *Brumfield*, 749 F.3d at 345, the "best" course is to give "all parties with a real stake in [the] controversy … an opportunity to be heard." *Hodgson v. UMWA*, 473 F.2d 118, 130 (D.C. Cir. 1972). That includes Movants.

### D. The existing parties do not adequately represent Movants' interests.

Finally, no party adequately represents Movants' interests. Inadequacy is not a demanding standard. Some courts outside the Eleventh Circuit presume adequate representation in cases where government defendants are charged with defending the constitutionality of statutes. But as this Court recently explained, "this Circuit" does not apply a "heightened standard to motions to intervene." *Greene v. Raffensperger*, 2022 WL 1045967, at *3 (N.D. Ga. Apr. 7, 2022). Rather, "under binding case law in this Circuit, the burden to show inadequacy of representation is 'minimal' and only requires intervenors to show that Defendants' representation of their interests *may* be inadequate." *Id.*; *see also Chiles*, 865 F.2d at 1214 ("the burden of making that showing should be treated as minimal," and proposed intervenors "should be allowed to intervene unless it is clear that [the current parties] will provide adequate representation").

Movants satisfy this minimal standard. To begin with, the State doesn't even share Movants' interests, let alone adequately represent them. The State Defendants necessarily represent "the public interest," rather than Movants' "particular interest[s]" in protecting their resources and the rights of their candidates and voters. *Coal. of Ariz./N.M. Counties for Stable Economic Growth v. DOI*, 100 F.3d 837, 845 (10th Cir. 1996). While the State "may well believe

11

that what best serves the public welfare will also best serve the overall interests of [Movant], the fact remains that the [Movant] may see their own interest in a different, perhaps more parochial light." *Conservation L. Found. of New England, Inc. v. Mosbacher*, 966 F.2d 39, 44 (1st Cir. 1992). For that reason, courts "often conclude[] that governmental entities do not adequately represent the interests of aspiring intervenors." *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003).

That's especially true in election litigation. The State has no interest in the election of Movants' candidates, the mobilization of Movants' voters, or the costs associated with either. Instead, as state officials acting on behalf of all Georgia citizens and the State itself, the State Defendants must consider "a range of interests likely to diverge from those of the intervenors." *Meek v. Metro. Dade Cty.*, 985 F.2d 1471, 1478 (11th Cir. 1993). Those clashing interests include:

- the interests of Plaintiffs. *See In re Sierra Club*, 945 F.2d 776, 779-80 (4th Cir. 1991).
- "the expense of defending the current [laws] out of [state] coffers." *Clark v. Putnam Cnty.*, 168 F.3d 458, 461 (11th Cir. 1999).
- "the social and political divisiveness of the election issue" to the State. *Meek*, 985 F.2d at 1478.

Movants address the issue's effect on the Republican Party and Republican voters. This Court has recognized that these differences meet the "minimal burden to show that the existing Defendants' representation of their interests, at the very least, *may* be inadequate." *Greene*, 2022 WL 1045967, at *4

12

(granting intervention as of right to Georgia residents challenging the eligibility of a congressional candidate).

At a minimum, Movants will "serve as a vigorous and helpful supplement" to Defendants and "can reasonably be expected to contribute to the informed resolutions of these questions." *NRDC v. Costle*, 561 F.2d 904, 912-13 (D.C. Cir. 1977). Movants seek to preserve Georgia's election safeguards, including the roll-maintenance practices and mailing-address requirements challenged here, and Movants bring a wealth of knowledge and experience to the table. Movants thus should be granted intervention under Rule 24(a)(2).

## II. Alternatively, Movants are entitled to permissive intervention.

Even if Movants were not entitled to intervene as of right under Rule 24(a), this Court should grant them permissive intervention under Rule 24(b). Courts grant permissive intervention when the movant has "a claim or defense that shares with the main action a common question of law or fact," Fed. R. Civ. P. 24(b), a requirement that "is generally given a liberal construction," *Ga. Aquarium*, 309 F.R.D. at 690 (citing *Stallworth v. Monsanto Co.*, 558 F.2d 257, 269 (5th Cir. 1977)). Courts also consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3); *see Chiles*, 865 F.2d at 1213. Inadequate representation is not a requirement, *Black Voters Matter*, Doc. 42 at 5, No. 1:20-cv-4869 (N.D. Ga.), and Rule 24(b)(2) "plainly dispenses with any requirement that the intervenor shall have a direct personal or pecuniary interest in the subject of the litigation," *SEC v. U.S. Realty & Imp. Co.*, 310 U.S. 434, 459 (1940).

The requirements of Rule 24(b) are met here. As explained in Section I, this motion is timely. And Movants will raise defenses that share common questions with the parties' claims and defenses. Plaintiffs allege that Georgia's probable-cause requirement, roll-maintenance practices, and mailing-address requirements for the homeless violate the NVRA. Movants reject those allegations.

Unsurprisingly, this Court has held that these conditions justified permissive intervention in similar election disputes. *E.g.*, *New Ga. Project*, 2021 WL 2450647, at *2 (granting intervention to the same Movants here); *Greene*, 2022 WL 1045967, at *4. That's often the simplest path, since "the Court need not determine whether [Movant] [is] entitled to intervene as a matter of right under the more stringent standard in Rule 24(a)" when "Movant meet[s] the standard for permissive intervention under Rule 24(b)." *Ga. Aquarium*, 309 F.R.D. at 690; *see also, e.g.*, *Swenson*, Doc. 38, No. 20-cv-459 (W.D. Wis.) ("[T]he [RNC and Republican Party of Wisconsin] have a defense that shares common questions of law and fact with the main action; namely, they seek to defend the challenged election laws to protect their and their members' stated interests—among other things, interest in the integrity of Wisconsin's elections."); *Priorities USA*, 2020 WL 2615504, at *5 (recognizing that the permissive-intervention criteria were met when the RNC "demonstrate[d] that they seek to defend the constitutionality of Michigan's [election] laws, the same laws which the plaintiffs allege are unconstitutional").

Movants' intervention will not unduly delay this litigation or prejudice anyone. "[A]llowing intervention by Movants will not unduly delay or prejudice

14

the adjudication of [Plaintiffs'] claims" when the "litigation is in a relatively nascent stage and none of the deadlines" in a forthcoming scheduling order have passed. *Ga. Aquarium*, 309 F.R.D. at 691. Here, the complaint was filed just two weeks ago. And no party has filed substantive motions. *See Greene*, 2022 WL 1045967, at *5. At this stage, "[w]hatever additional burdens adding the [intervenors] to this case may pose, those burdens fall well within the bounds of everyday case management." *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 200 (2022).

Responding to Movants' arguments will not "unduly delay or prejudice" the case, Fed. R. Civ. P. 24(b)(3), since Plaintiffs "can hardly be said to be prejudiced by having to prove a lawsuit [they] chose to initiate," *Security Ins. Co. of Hartford v. Schipporeit, Inc.*, 69 F.3d 1377, 1381 (7th Cir. 1995). Movants also commit to submitting all filings in accordance with whatever briefing schedule the Court imposes, "which is a promise" that undermines claims of undue delay. *Emerson Hall Assocs., LP v. Travelers Casualty Ins. Co. of Am.*, 2016 WL 223794, *2 (W.D. Wis. Jan. 19, 2016). Allowing Movants to intervene will allow "the Court … to profit from a diversity of viewpoints as [Movants] illuminate[s] the ultimate questions posed by the parties." *Franconia Minerals (US) LLC v. United States*, 319 F.R.D. 261, 268 (D. Minn. 2017). Where a court has doubts, "the most prudent and efficient course" is to allow permissive intervention. *Lac Courte Oreilles Band of Lake Superior Chippewa Indians of Wis. v. United States*, 2002 WL 32350046, *3 (W.D. Wis. Nov. 20, 2002).

## CONCLUSION

Movants respectfully request that the Court grant their motion and allow them to intervene as defendants.

This 14th day of August, 2024.

Respectfully submitted,

/s/ *Baxter D. Drennon*

Thomas R. McCarthy\*
Gilbert C. Dickey\*
Conor D. Woodfin\*
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard
Suite 700
Arlington, VA 22209
(703) 243-9423
tom@consovoymccarthy.com
gilbert@consovoymccarthy.com
conor@consovoymccarthy.com

\**pro hac vice* forthcoming

William Bradley Carver, Sr.
  Georgia Bar No. 115529
HALL BOOTH SMITH, P.C.
191 Peachtree Street NE
Suite 2900
Atlanta, GA 30303
(404) 954-5000
BCarver@hallboothsmith.com

Baxter D. Drennon
  Georgia Bar No. 241446
HALL BOOTH SMITH, P.C.
200 River Market Avenue
Suite 500
Little Rock, AR 72201
(501) 319-6996
BDrennon@hallboothsmith.com

*Counsel for Movants*

## CERTIFICATE OF COMPLIANCE

This document complies with Local Rule 5.1(B) because it uses 13-point Century Schoolbook.

/s/ *Baxter D. Drennon*

## CERTIFICATE OF SERVICE

On August 16, 2024, I e-filed this document on ECF, which will email everyone requiring service.

/s/ *Baxter D. Drennon*