# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| NEW GEORGIA PROJECT and A. PHILLIP RANDOLPH INSTITUTE, <br><br> *Plaintiffs*, <br><br> v. <br><br> BRAD RAFFENSPERGER, in his official capacity as Georgia Secretary of State, *et al.*, <br><br> *Defendants*. | No. 1:24-cv-3412 |

## PLAINTIFFS OPPOSITION TO MOTION TO INTERVENE

Plaintiffs respectfully request that the Court hold the motion to intervene filed by the Republican National Committee and the Georgia Republican Party, Inc. (collectively, the "Republican Committees" or "Proposed Intervenors") (ECF No. 64) in abeyance until all of the named Defendants have actually responded to the lawsuit. Only after Defendants have responded is it possible for the Court to evaluate the Proposed Intervenors' assertions as to their interests and the adequacy of representation.

If the Court decides to rule on this motion on the merits now, it should deny intervention. Beyond material technical defects with the Proposed Intervenors' motion (discussed below), adding two more defendants to the 37 named Defendants already in this case does not support judicial economy because it will add more

1

papers for this Court's review, more discovery for the parties, more motions to respond to, and more time spent in hearings, in conferences, and in trial rehashing points other Defendants have already made.

Moreover, the Proposed Intervenors have failed to show their entitlement to intervene. Their application relies on erroneous statements of the applicable legal standards.[1] While the Republican Committees have filed a timely, albeit premature,

---

[1] For example, contrary to Proposed Intervenors' suggestion that political parties are "routinely" granted intervention, ECF No. 64 at 1-2 n. 1 & 2, courts in the Eleventh Circuit (and elsewhere) have denied motions to intervene by political and partisan parties. *See, e.g., United States v. State of Alabama*, No. 2:06-CV-392-WKW, 2006 WL 2290726, at *9 (M.D. Ala. Aug. 8, 2006) (denying motion to intervene of Democratic officials); *Chestnut v. Merrill*, No. 2:18-CV-907-KOB, 2018 WL 9439672, at *1–2 (N.D. Ala. Oct. 16, 2018) (denying intervention by Republican legislator). *See generally Yazzie v. Hobbs*, No. CV-20-08222-PCT-GMS, 2020 WL 8181703, at *4 (D. Ariz. Sept. 16, 2020) (denying motion to intervene of Republican committees); *Democracy N. Carolina v. N. Carolina State Bd. of Elections*, No. 1:20-cv-457, 2020 WL 6591397, at *2; M.D.N.C. June 24, 2020) (declining to reconsider denial of Republican committee intervention); *Common Cause R.I. v. Gorbea*, No. 1:20-CV-00318-MSM-LDA, 2020 WL 4365608, at *3 n.5 (D.R.I. July 30, 2020) (rejecting state Republican intervention motion); *Feehan v. Wisconsin Elections Comm'n*, No. 20-CV-1771-PP, 2020 WL 7182950, at *7 (E.D. Wis. Dec. 6, 2020) (denying motion to intervene of Democratic committees); *Chambers v. North Carolina*, No. 20-CVS-500124 (N.C. Sup. Ct. Sept. 3, 2020) (order denying Republican committees' motion to intervene); *Mich. All. For Retired Ams. v. Benson*, 20- 000108-MM (Mich. Court of Claims, Sept. 18, 2020) (denying Republican entities intervention). *League of Women Voters of Michigan v. Johnson*, No.2:17-CV-14148, 2018 WL 10483889, at *1 (E.D. Mich. Apr. 4, 2018) (denying Republican legislators' motion to intervene); *One Wisconsin Inst., Inc. v. Nichol*, 310 F.R.D. 394, 399 (W.D. Wis. 2015) (denying motion to intervene by Republican legislators); *Am. Ass'n of People With Disabilities v Herrera*, 257 F.R.D. 236, 240 (D.N.M. 2008) (denying motion to intervene by Republican committee and legislators to intervene).

application, they do not meet any of the other requirements of Rule 24(a) intervention. The Proposed Intervenors have failed to identify (i) any particular interest in this litigation beyond their generic interests in maintaining election administration and rules, ECF No. 64 at 6-9 or (ii) how any of the generic interests they *do* identify would be impaired if Plaintiffs prevail. ECF No. 9-11. In sum, they fail to show how intervention is necessary to protect their interests.

And most importantly, the Republican Committees fail to show (and cannot show) that the existing Defendants will inadequately represent their claimed interests in maintaining the integrity of elections, promoting accurate voter registration lists, or preventing changes to the rules that govern elections — as is required to establish intervention as of right under Federal Rule of Civil Procedure 24(a)(2) — Notably, the existing Defendants are state actors charged by law with defending Georgia's election laws, and they have shown in prior cases that they will do so zealously. Proposed Intervenors have provided no evidence that the existing Defendants will do otherwise here. There is no reason to believe that the Republican Committees would bring anything further to the litigation, other than to needlessly multiply these proceedings, burdening Plaintiffs and this Court. Under these circumstances, the Federal Rules disfavor intervention, both as of right and permissively.

Moreover, the named Defendants – all of whom are public officials charged with defending Georgia's election laws – have not even responded to this lawsuit

yet. The Proposed Intervenors' assertions that the named Defendants "do not adequately represent Movants' interests," Mot. at 11-12, are entirely speculative.

There is no reason the motion could not be held in abeyance pending the Defendants' responsive pleadings. Moreover, holding the motion in abeyance will also give the Proposed Intervenors time to bring their motion into compliance with the various rules of procedure they failed to comply with in their rush to the courthouse, e.g., L.R. 3.3(a) (certificate of interested persons and corporate disclosure statement) L.R. 5.1(C) (prescribing motion formatting requirements); ECF No. 9 (Aug. 1, 2024 Standing Order) Sections II.a (prescribing format of responsive pleading).

Proposed Intervenors never conferred with Plaintiffs regarding their position on intervention and have provided no indication that they have conferred with other parties prior to filing their motion. Proposed Intervenors also indicated that they oppose holding their motion in abeyance until the Defendants respond to the complaint.

## BACKGROUND

Plaintiffs are nonprofit organizations that work to increase the civic participation of historically marginalized communities. On July 30, 2024, Plaintiffs commenced this action challenging 37 different government actors (all named as Defendants), all of whom are required to enforce the two challenged provisions of

recently enacted Senate Bill 189 ("S.B. 189") as well as the illegal removal of eligible voters  from the registration lists in five counties in contravention of the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. §§ 20501-20511. Plaintiffs allege that certain provisions of S.B. 189, individually and collectively, violate the NVRA and create an undue burden on the right to vote in violation of the First and Fourteenth Amendments to the U.S. Constitution.

Sixteen days after Plaintiffs filed their complaint – before any of the named Defendants has answered or otherwise responded to the Complaint – the Republican Committees filed this motion to intervene. ECF No. 64. For the following reasons, the motion should be denied.

## LEGAL STANDARD

A nonparty seeking to intervene as of right under Fed. R. Civ. P. 24(a)(2) bears the burden of satisfying four required elements: (1) their application must be timely; (2) they must have an "interest relating to the property or transaction which is the subject of the action"; (3) they must be "so situated that disposition of the action, as a practical matter, may impede or impair [their] ability to protect that interest"; and (4) their interests must be "represented inadequately by the existing parties to the suit." *Stone v. First Union Corp.*, 371 F.3d 1305, 1308–09 (11th Cir. 2004) (quoting *Worlds v. Dep't of Health & Rehab. Servs.*, 929 F.2d 591, 593 (11th Cir. 1991)); *see also Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989); *United States v. City*

*of Miami*, 278 F.3d 1174, 1178 (11th Cir. 2002).  A proposed intervenor must satisfy all four elements; a failure to establish just one necessary element is fatal to a motion to intervene as of right. *Id.*

While a court has discretion to grant or deny motions for permissive intervention under Fed. R. Civ. P. 24(b), "[i]n exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(1), (3). Even if a movant's intervention is timely and shares a claim or defense in common with the main action, requirements under Rule 24(b)(2), the court nonetheless "has the discretion to deny intervention. . .," *Chiles*, 865 F.2d at 1213 (citation omitted), and may consider "almost any factor rationally relevant. . . ." *Bake House SB, LLC v. City of Miami Beach*, No. 17-20217-CV-LENARD/GOODMAN, 2017 WL 2645760, at *6 (S.D. Fla. June 20, 2017) (citation omitted). These factors include "'the nature and extent of the intervenors' interest' and 'whether the intervenors' interests are adequately represented by other parties.'" *Perry v. Proposition 8 Off. Proponents*, 587 F.3d 947, 955 (9th Cir. 2009) (citation omitted).  The movant "must demonstrate an actual claim or defense—more than a general interest in the subject matter of the litigation—before permissive intervention is allowed." *First Nat'l Bank of Tenn. v. Pinnacle Props. V, LLC*, NO. 1:11-CV-2087- ODE, 2011 WL 13221046, at *3 (N.D. Ga. Nov. 1, 2011) (citation omitted).

## ARGUMENT

### I.    The Republican Committees are Not Entitled to Intervene as of Right.

The Republican Committees' motion fails to satisfy three of the four required elements for intervention as of right. As Plaintiffs explain below, the Republican Committees have not identified any legally protectable interests to justify intervention; the generic interests they do advance will not be impeded or impaired without their participation in this case; and, in any event, their asserted interests are adequately represented by the 37 Defendants who already have a duty to argue that "Georgia's duly enacted election rules" are valid. ECF No. 64 at 2.

Notably, the Republican National Committee, represented by the same law firm representing it in this action, argued less than five months ago in a different court that, "[f]ederal courts routinely deny intervention to parties attempting to insert themselves into NVRA cases." *See Republican National Committee et al. v. Benson et al.*, W.D. Mich. No. 1:24-cv-262 ECF No. 16, Plaintiff RNC's Response in Opposition to Intervention Motion (Apr. 5, 2024) at 2 (collecting cases) ("RNC Benson Brief"). Their motion to intervene in this case takes numerous legal positions at odds with what they asserted in the *Benson* and other litigation,[2] and nowhere in

---

[2] *See, e.g., RNC et al. v. Whitmer et al.*, W.D. Mich. No. 1:24-cv-720 ECF No. 18 (Aug. 19, 2024) at 9-10 (opposing permissive intervention because "intervenors' interests align with the State's and they have not shown that they can more adequately defend state laws than the State itself . . .[and ] will increase the costs of

their papers do the Republican Committees explain why they assert one position on the intervention standards when they are a plaintiff opposing intervention, and another when they are a putative intervenor.

For each of these reasons, the Court should deny the Republican Committees' motion to intervene as of right.

### A.     The Republican Committees fail to identify any legally protectable interest that entitles them to intervention.

The Republican Committees advance a series of generic, speculative, and partisan interests unconnected to the issues in this case. None entitles them to participate as a party in this case. Intervention as of right under Rule 24(a)(1) is "obviously meant" to encompass only "significantly protectable interest[s]." *Donaldson v. United States*, 400 U.S. 517, 531 (1971). The Eleventh Circuit has recognized that an interest warranting intervention must be "direct, substantial, [and] legally protectable." *Huff v. IRS Comm'r*, 743 F.3d 790, 796 (11th Cir. 2014) (citation omitted). "What is required is that the interest be one which the *substantive* law recognizes as belonging to or being owned by the applicant." *United States v. S. Fla. Water Mgmt. Dist.*, 922 F.2d 704, 710 (11th Cir.), *cert. denied*, 502 U.S. 953 (1991) (citation omitted) (emphasis in original).

---

litigation, make scheduling more cumbersome, and inevitably slow down proceedings") (internal quotations omitted).

The Republican Committees' stated interests — to "maintain the integrity of the election process" and "orderly administration" of elections, to maintain 'the duly enacted election rules," to promote "accurate voter registration lists," and to avoid unnecessary electioneering expenses, ECF No. 64 at 6-8 — fall well short of the direct and substantial interests required to intervene as of right. These kinds of generalized interests in fair elections are shared by *all* Georgians, including the Defendant Secretary of State, as well as the Defendant members of the State Election Board and the County Election Boards, who are already parties to this lawsuit. Asserting interests shared by all citizens is insufficient to establish intervention as of right. *Athens Lumber Co. v. Fed. Election Comm'n*, 690 F.2d 1364, 1366 (11th Cir. 1982) (finding movant asserting interests "shared with . . . all citizens" is "so generalized it will not support a claim for intervention of right") (citation omitted). And the Republican Committees assert these interests — regardless of whether S.B. 189 and the conduct of the Counties violate the rights of Plaintiffs and their members. But Plaintiffs' success would merely restore practices from recent elections that no one suggests were in violation of federal law; if enjoining the Challenged Provisions of S.B. 189 and the unlawful conduct of Counties would competitively disadvantage the Republican Committees, it would do so only by removing barriers that, if left to stand, will make it harder for lawful impacted Georgia voters to participate in the state's elections. Maintaining those barriers and

9

suppressing these voters is not the sort of legally protectable interest that gives rise to intervention as of right under Rule 24(a). *See Harris v. Pernsley*, 820 F.2d 592, 601 (3d Cir.), *cert. denied*, 484 U.S. 947 (1987) (concluding that alleged interest in perpetuating "unconstitutional conditions" was not a "legally protected interest" that can support intervention).

Similarly, the Republican Committees' argument "that political parties are "routinely" granted intervention because "election rules affect political parties most of all," ECF No. 64 at 2, 7, are demonstrably incorrect. *See, e.g.*, *Common Cause Rhode Island v. Gorbea*, No. 1:20-cv-00318-MSM-LDA, 2020 WL 4365608, at *3 n.5 (D.R.I. July 30, 2020) (rejecting argument that the Republican Party had a legally protected  interest "to see that existing laws remained enforced"); *Democracy N.C. v. N.C. State Bd. of Elections*, No. 20-CV457-WO-JLW, ECF No. 59 at 4 (M.D.N.C. June 30, 2020) (declining Republicans Committees' motion to intervene because they did not have protected interest in "preserv[ing] North Carolina's voting laws"). *See also supra* n.1. Many of the cases that the Republican Committees cite in their brief as suggesting otherwise involve factual distinctions not present here and demonstrate the importance of considering each case on its facts under the standards of Rule 24.[3] Indeed, as the Republican National Committee observed in its *Benson*

---

[3] For example, contrary to the Proposed Intervenors' repeated citation to *New Ga. Project v. Raffensperger*, No. 1:21-cv-1333 to support their argument that they are entitled to intervention as of right, ECF No. 64 at 1, 9, the decision in *New Ga.*

brief, its interest is "highly speculative, and contingent on . . . assumptions . .. . that Plaintiffs will prevail . . ., that the appropriate remedy would require [the State] to adopt new procedures . . ., [and] that Plaintiffs will obtain "rushed" relief before the

_____

*Project* principally concerned a grant of permissive intervention under Rule 24(b); the court expressly declined to "address whether the Proposed Intervenors [were] entitled to intervene as of right . . . ." *New Ga. Project*, 2021 WL 2450647 at *2 n.3 (citation and quotation omitted). Almost all of the other Northern District of Georgia cases Proposed Intervenors cite in footnote 2 of their brief similarly granted permissive intervention only, not intervention as of right, including four cases that were consolidated with the *New Ga. Project* case as part of the S.B. 202 litigation (*Vote America*, *Asian Ams. Advancing Justice*, *Ga. State Conf. of NAACP*, *Sixth Dist. of the African Methodist Episcopal Church*). The same is true for the *Black Voters Matter*, *International Alliance, Coalition of Good Governance*, and *Concerned Black Clergy*, all of which only concerned permissive intervention, and intervention was unopposed in the *United States v. Georgia* matter. Similarly, many of the cases cited in footnote 1 only concerned permissive intervention. Other cases cited involved litigation where the political committee was directly regulated by the law at issue, or the case was commenced by the opposing political party and the intervenor was admitted for parity. *See, e.g., La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 306 (5th Cir. 2022) (challenged statute regulated the behavior of partisan poll watchers recruited, trained, and appointed by Republican committees); *Issa v. Newsom*, No. 2:20-CV-01044-MCE-CKD, 2020 WL 3074351, at *4 (E.D. Cal. June 10, 2020) (challenged executive order threatened to disenfranchise Democratic Party voters); *Democratic Party of Va. v. Brink*, C.A. No. 3:21-CV-756-HEH, 2022 WL 330183 at *2 (E.D. Va. Feb. 3, 2022) (permitting Republican party to intervene in case brought by Democratic party); *RNC v. Chapman*, 447 M.D. 2022 (Pa. Commw. Ct. Sept. 29, 2022) (permitting Democratic party to intervene in case by Republican party). Some of Proposed Intervenors' other cases turned on meaningful disagreement with the state defendants, indicating that, unlike here, the political parties were inadequately represented. *See, e.g., Paher v. Cegavske*, No. 3:20-CV-00243-MMD-WGC, 2020 WL 2042365 (D. Nev. Apr. 28, 2020) (Democratic intervenors were adverse to state defendants in a different lawsuit on the same subject); *League of Women Voters of Minn. Educ. Fund v. Simon*, No. 20-CV-1205 ECT/TNL (D. Minn. June 23, 2020) (state defendants took the position that challenged laws were unconstitutional, diverging from intervenors' position that they were legal).

2024 election. . . . . the proposed intervenors' speculative interests are contingent on each of these events means they are not substantial enough to support intervention." RNC  Benson Brief at 4-5.

That the Republican Committees' "candidates and voters" have an interest in being protected from invalidation of Georgia's election rules, ECF No. 64 at 2, is likewise unpersuasive. Under  this  theory  of  intervention,  *any* party in Georgia — or any citizen of Georgia, for that matter — would be entitled to intervene as of right in *any* lawsuit so long as the case involves a law impacting an election involving their preferred candidate. This unlimited interpretation of interests requiring intervention would render Rule 24(a)'s requirements meaningless.

Finally, as  for  the  Republican  Committees'  unsupported  and  speculative argument that they have an interest in "protecting their resources," ECF No. 64 at 8, 11, the Eleventh Circuit has made "plain that something more than an economic interest" is necessary for intervention as a matter of right, *Georgia v. U.S. Army Corps of Eng'rs*, 302 F.3d 1242, 1251 (11th Cir. 2002).   *Cf.* RNC Benson Brief at 6 ("That the proposed intervenors spend money pursuing their interests does not make those interests  any  less  speculative  .  .  .  [and]  is  likewise  insufficient  to  support intervention").

In sum, the Republican Committees fail to identify a direct, substantial, and legally protectable interest sufficient to support intervention as of right.

**B.     The Republican Committees' generic interests will not be impeded or impaired absent intervention.**

While the Republican Committees assert only generalized interests in a functioning electoral process (which are insufficient to support intervention as of right), they also fail to articulate how a ruling in Plaintiffs' favor will impede those interests.  Instead, the Republican Committees advance two speculative theories of impairment: They claim they will "suffer" because an adverse decision will "undercut democratically enacted laws," ECF No. 64 at 9, and they hypothesize that a ruling in Plaintiffs' favor might require them to expend "substantial resources" to educate their voters on any changes to Georgia's election laws. *Id*. at 10.

These supposed impairments are far too generalized and speculative to demonstrate "*practical* impairment" entitling the Republican Committees to intervene. *Stone*, 371 F.3d at 1310 (emphasis added); *see also United States v. City of Jackson*, 519 F.2d 1147, 1153 (5th Cir. 1975) (explaining how the interest that "must be impaired or impeded" must be "the substantive one" proposed intervenors assert); *Johnson v. Mortham*, 915 F. Supp. 1529, 1538 (N.D. Fla. 1995) (denying intervention when movants had "no more than a generalized interest" in the case and the alleged impairment of their interest was "no more than speculative").

Plaintiffs are challenging list maintenance practices in four counties as well as two provisions of S.B. 189 that violate federal law. The Republican Committees do not explain how enjoining these practices or these *new* and burdensome

provisions at some point in the future will cause "inevitable confusion" or create an "incentive [for voters] to remain away from the polls." ECF No. 64 at 10. If anything, it is S.B. 189 and its provisions that create confusion as Georgians attempt to navigate the changes in voting restrictions, which the Republican Committees, for reasons they have not adequately explained, seek to preserve and demand adherence to.

In short, the Republican Committees' generalized speculation is not enough to show a "practical disadvantage which warrants intervention as of right." *Chiles*, 865 F.2d at 1214 (citing *Atlantis Dev. Corp. v. United States*, 379 F.2d 818, 829 (5th Cir. 1967)).

### C.     The Republican Committees Have Not and Cannot Show Why the Existing Parties Cannot Adequately Represent Their Interests.

Contrary to the Proposed Intervenors' suggestion, ECF No. 64 at 11, adequate representation by the existing parties to the suit is presumed when an existing party seeks the same objectives as the proposed intervenors. *See Stone*, 371 F.3d at 1311 (citing *Clark v. Putnam County*, 168 F.3d 458, 461 (11th Cir. 1999)). To overcome the presumption, the Republican Committees must "present some evidence to the contrary." *Stone*, 371 F.3d at 1311; *see also Clark*, 168 F.3d at 461. Moreover, when the existing parties are government entities, the Eleventh Circuit presumes "that the government entity adequately represents the public, and . . . require[s] the party seeking to intervene to make a strong showing of inadequate representation." *Burke*

*v. Ocwen Fin. Corp.*, 833 F. App'x 288, 293 (11th Cir. 2020) (citing *FTC v. Johnson*, 800 F.3d 211, 215 (8th Cir. 2015)); *see also Stuart v. Huff*, 706 F.3d 345, 351 (4th Cir. 2013) ("[W]hen a statute comes under attack, it is difficult to conceive of an entity better situated to defend it than the government."); *Planned Parenthood v. Kaul*, 942 F.3d 793, 799 (7th Cir. 2019) (similar); *Texas v United States*, 805 F.3d 653, 661-62 (5th Cir. 2015) (similar); *Prete v. Bradbury,* 438 F.3d 949, 956 (9th Cir. 2006) (similar); *Cotter v. Mass. Ass'n of Minority L. Enf't Officers*, 219 F.3d 31, 35 (1st Cir. 2000).[4]

Even if Proposed Intervenors rebut this presumption, a court will then "return[] to the general rule that adequate representation exists '[1] if no collusion is shown between the representative and an opposing party, [2] if the representative

---

[4] The Proposed Intervenors citation to *Greene v. Raffensperger*, 2022 WL 1045967, at *3 (N.D. Ga. Apr. 7, 2022), ECF No. 64 at 11 is unavailing. The *Greene* court noted that the litigants had failed to "identify any cases in this Circuit applying a . . . heightened standard to motions to intervene" and claimed that Eleventh Circuit law diverged from other federal appellate courts without recognizing that the Eleventh Circuit's 2020 decision in *Burke* is entirely consistent with the presumption of adequacy afforded to government defendants in other circuits. 2022 WL 1045967, at *3. Moreover the intervenors in *Greene* made a far stronger and more specific showing than have the Republican Committees as to why any presumption of adequacy was rebutted. 2022 WL 1045967, at *4 (noting that Intervenors had shown an actual "divergence of interest" including the State's actual failure to "present[] substantive arguments in opposition to" the complaint and the movant had shown it had a legally protectable interest by showing the "Challenge Statute grant[ed intervenors" a number of statutorily conferred rights," and "[i]f Plaintiff's lawsuit were successful, Proposed Intervenors would be unable to exercise any of these statutorily conferred rights."). Proposed Intervenors have identified no such comparable statutorily conferred right here.

does not have or represent an interest adverse to the proposed intervener, and [3] if the representative does not fail in fulfillment of his duty.'" *Stone*, 371 F.3d at 1311 (quoting *Clark*, 168 F.3d at 461).

The Proposed Intervenors' contentions that "no party adequately represents [their] interests," ECF No. 64 at 11, are speculative and premature. Specifically, Plaintiffs respectfully submit that at this juncture, because the Defendants have not even responded to the Complaint, or otherwise joined issue on the substance of any of the Plaintiffs' claims, the record simply does not permit a finding that the Defendants' representation will be inadequate. It very well may be that when Defendants respond to the complaint, they will indicate that they share the exact same goal as the Republican Committees — to defend their voter list maintenance programs and S.B. 189 — Indeed, Defendants are required to do under the Georgia Constitution and Georgia law many of the same things that the Proposed Intervenors assert are their interests in this litigation. *See, e.g.,* O.C.G.A. § 21-2-31(2) (State Election Board, further, must "formulate, adopt, and promulgate such rules and regulations, consistent with law, as will be conducive to the fair, legal, and orderly conduct. . ." of elections).

Where "an existing party seeks the same objectives as the would-be interveners," the Republican Committees shoulder the "burden of coming forward with some evidence to the contrary." *Clark*, 168 F.3d at 461 (citation omitted). They

16

have not. The Republican Committees fail to provide *any* evidence to suggest that the Secretary of State, the State Election Board's members, or the Defendant County Board members will inadequately represent their interests or that they will refuse to enforce or defend the law.

Instead, the Republican Committees make blanket characterizations of the existing Defendants that only underscore the adequacy of the Defendants' representation. For example, the Republican Committees explain that, "Defendants necessarily represent the public interest," ECF No. 64 at 11, while simultaneously asserting their own interests in "ensuring the integrity of the election process" and "the orderly administration of elections." *Id.* at 7, which are precisely the same interests represented by Defendants.

The other arguments the Republican Committees advance to show supposedly unique interests – such as "protecting their resources and the rights of their candidates and voters," for example, ECF No. 64 at 11 – have been rejected time and again as inadequate to support intervention. *See, e.g.*, *Gorbea*, 2020 WL 4365608, at *3 n.5 (rejecting state Republicans Party's rationale "to see that existing laws remained enforced" because "[t]hat is the same interest the defendant agencies are statutorily required to protect"); *Democracy N.C.*, No. 20-CV457-WO-JLW, ECF No. 59 at 4 (declining to reconsider denial of Republicans Committees' motion to intervene because their alleged interest in "preserv[ing] North Carolina's

voting laws" is "being adequately represented" by government defendants). As the Republican National Committee observed less than five months ago in the *Benson* litigation:.

> The proposed intervenors fall far short of showing that the State's representation will be inadequate.  After all, the State *represents* the interests of voters.  The Secretary is the State's chief election officer . . . The NVRA charges them with "protecting electoral integrity and the maintenance of accurate voter rolls." *Bellitto v. Snipes*, 935 F.3d 1192, 1198 (11th Cir. 2019).  "A party charged by law with representing the interests of the absent party will usually be deemed adequate." . . . . Moreover, the proposed intervenors have no evidence from this case that the State's representation will be inadequate.

RNC Benson Br. at 8-9 (second citation omitted, emphasis in original).

Because the Republican Committees have made no effort to demonstrate the existing Defendants' inadequacy of representation, intervention as of right is inappropriate.

## II.    The Republican Committees' Request for Permissive Intervention Should be Denied.

While this Court has the discretion to grant permissive intervention when the movant has a defense "that shares with the main action a common question of law or fact," Fed. R. Civ. P. 24(b)(1)(B), the Republican Committees' intervention here – in a case that already has 37 Defendants – will inevitably duplicate the existing Defendants' arguments and delay adjudication of the original parties' rights. Even more, the Republican Committees fail to advance any interest that will assist this Court in efficiently resolving this case. Rule 24(b)(3) requires courts to consider

whether intervention will "unduly delay or prejudice the adjudication of the original parties' rights" before granting permissive intervention, and here, the Republican Committees' motion makes clear that their participation in this case will only prolong and multiply litigation proceedings.

Courts regularly deny permissive intervention when, as here, would-be intervenors bring little to the table aside from duplicative arguments. *See, e.g.*, *Gumm v. Jacobs*, 812 F. App'x 944, 948 (11th Cir. 2020) (holding district court properly exercised discretion in denying permissive intervention when movant was adequately represented by existing parties); *Perry*, 587 F.3d at 955 (same); *Wollschlaeger v. Farmer*, No. 11-22026-Civ-COOKE/TURNOFF, 2011 WL 13100241, at *3 (S.D. Fla. July 11, 2011) (denying permissive intervention because intervenors' inclusion would be "duplicative" and "unlikely to shed any new light on the constitutional issues in this case"); *Smith v. Cobb Cnty. Bd. of Elections & Registrations*, 314 F. Supp. 2d 1274, 1313 (N.D. Ga. 2002) (denying intervention when movants "failed to demonstrate that their interests are not being adequately represented" and failed to show any "compelling reason" for permissive intervention).

That the Republican Committees seek to intervene to defend S.B. 189 when Defendants are already charged with this very duty weighs heavily against their request for permissive intervention. *See* RNC Benson Br. at 13 (where "proposed

intervenors' interests are speculative, remote, and already well-represented by the State . . . [*a]ny* delay caused by intervention, then, would be undue") (citations and internal punctuation omitted). Courts have repeatedly denied permissive intervention when would-be intervenors' interests are already represented by existing parties, and where would-be intervenors bring little to the litigation except a greater likelihood for delaying the resolution of these critical election issues. *See, e.g., Lacasa v. Townsley*, No. 12-22432-CIV-ZLOCH, 2012 WL 13069998, at *2 (S.D. Fla. July 6, 2012) (denying permissive intervention where proposed intervenor's interest "will be adequately represented by the existing Defendant" and permitting intervention "will only present a risk of delaying the adjudication of the case"); *League of Women Voters of Fla. v. Detzner*, 283 F.R.D. 689 (N.D. Fla. 2012) (denying permissive intervention where the proposed intervenors sought only to defend "a statute and rule they had no right to have enacted in the first place" and "ha[d] no right to prevent others from conducting voter-registration drives" or "to make it harder for other qualified applicants to register to vote"); *Wollschlaeger*, 2011 WL 13100241, at *3.

Adding more parties to this litigation will contribute nothing except "more issues to decide [and] more discovery requests." *South Carolina v. North Carolina*, 558 U.S. 256, 287 (2010) (Roberts, C.J., concurring in part and dissenting in part); *see also ManaSota-88, Inc. v. Tidwell*, 896 F.2d 1318, 1323 (11th Cir. 1990)

(affirming denial of permissive intervention when intervention "would severely protract the litigation"). The Republican Committees do not identify any truly unique perspectives they would bring to the case that are different from those Defendants will raise. They assert nothing more than "a general interest in the subject matter of the litigation. . . .," which is not enough for permissive intervention. *Pinnacle Props. V, LLC*, 2011 WL 13221046, at *3 (citation omitted).

It is entirely within this Court's discretion to avoid the inevitable delays that will flow from intervention, as courts regularly do. *See, e.g.*, *Democracy N.C.*, No. 20-CV457-WO-JLW, ECF No. 48 at 6 (M.D.N.C. June 24, 2020) (denying intervention of Republican Party entities and finding that "allowing [them] to intervene will result in undue prejudice on the parties and will result in 'accumulating . . . arguments without assisting the court.'" (quoting *Allen Calculators, Inc. v. Nat'l Cash Register Co.*, 322 U.S. 137, 141–42 (1944))); *Ansley v. Warren*, No. 1:16cv54, 2016 WL 3647979, at *3 (W.D.N.C. July 7, 2016) (denying timely intervention motions by Republican state legislators because "allowing the Movants to intervene . . . would needlessly prolong and complicate this litigation, including discovery, and delay the final resolution of this case"); *One Wis. Inst. Inc.*, 310 F.R.D. at 399 (denying permissive intervention to Republican officials and voters because "the nature of this case requires a higher- than-usual commitment to a swift resolution"); *Herrera*, 257 F.R.D. at 259 (denying timely intervention motions by Republican

entities seeking to defend restrictive election law because "intervention is likely to lead to delays that could prejudice the Plaintiff's case and the Defendant" by increasing pleadings and discovery). Delays resulting from intervention are important factors for courts to consider, especially for time-sensitive voting rights cases. See *Georgia*, 302 F.3d at 1250 (recognizing permissive intervention is inappropriate when it "will not unduly prejudice or delay the adjudication of the rights of the original parties" (citing *Walker v. Jim Dandy Co.*, 747 F.2d 1360, 1365 (11th Cir. 1984)); *see also ManaSota-88, Inc.*, 896 F.2d at 1323 (affirming denial of permissive intervention when intervention "would severely protract the litigation").

The Republican Committees themselves acknowledge the timing considerations that are present here, as they already assert an affirmative defense on Purcell grounds in their Proposed Answer, see ECF No. 65, essentially arguing that they think relief cannot be granted prior to the next election. Allowing the Republican Committees to intervene would only add to the delay, thereby prejudicing the Plaintiffs. For these reasons, this Court should deny the Republican Committees' request for permissive intervention.

## CONCLUSION

For these reasons, the Republican Committees' motion to intervene should be held in abeyance, or in the alternative, denied.

Respectfully submitted this 30th day of August, 2024.

_/s/ John A. Freedman_

Bryan L. Sells
Georgia Bar No. 635562
The Law Office of Bryan Sells, LLC
P.O. Box 5493
Atlanta, GA 31107
Tel: (404) 480-4212
Email: bryan@bryansellslaw.com

John Powers*
Hani Mirza
Matthew A. Fogelson*
ADVANCEMENT PROJECT
1220 L Street Northwest, Suite 850
Washington, DC 20005
(415) 238-0633
hmirza@advancementproject.org
jpowers@advancementproject.org
mfogelson@advancementproject.org

John A. Freedman*
Rachel L. Forman*
Jeremy Karpatkin*
**ARNOLD & PORTER KAYE SCHOLER LLP**
601 Massachusetts Ave. N.W.
Washington, DC  20001
(202) 942-5000
john.freedman@arnoldporter.com
rachel.forman@arnoldporter.com
jeremy.karpatkin@arnoldporter.com

Michael A. Rogoff*
**ARNOLD & PORTER KAYE SCHOLER LLP**
250 West 55th Street
New York, NY 10019
(212) 836-8000
michael.rogoff@arnoldporter,com
*admitted _pro hac vice_

<u>LOCAL RULE 7.1(D) CERTIFICATION OF COMPLIANCE</u>

Pursuant to L.R. 7.1(d), the undersigned hereby certifies that the foregoing brief has been prepared in Times New Roman 14 point, a font and type selection approved by the Court in Local Rule 5.1(B).

/s/ <i>John A. Freedman</i>          <br>John A. Freedman

Dated: August 30, 2024