# EXHIBIT 1
# S.B. 189

LC 47 3110S

The House Committee on Rules offers the following substitute to SB 189:

A BILL TO BE ENTITLED

AN ACT

1   To amend Chapter 2 of Title 21 of the Official Code of Georgia Annotated, relating to
2   elections and primaries generally, so as to remove the Secretary of State from the State
3   Election Board; to provide additional conflict of interest provisions for state-wide and local
4   election officers, officials, and employees relating to businesses providing goods and services
5   related to voting equipment or any other equipment related to the tabulation, auditing,
6   processing, or scanning of ballots; to provide for ballot access to certain political parties or
7   political bodies relating to nomination of presidential electors and candidates; to provide for
8   definitions; to revise provisions for determining residency for election purposes; to revise
9   provisions related to challenging electors; to provide that the text portions or machine marks
10  on ballots produced by ballot marking devices shall be counted for vote tabulation and
11  recount purposes instead of any machine coding; to authorize the use of physical ballots in
12  certain circumstances; to provide for chain of custody and related procedures for absentee
13  ballots; to provide timelines for the tabulation of absentee ballots and ballots cast by advance
14  voting; to provide procedures for requesting high resolution scanned images of ballots; to
15  provide for a pilot program to audit paper ballots using optical character recognition; to
16  revise a timing limitation on holding certain special elections in conjunction with certain
17  state-wide primaries or elections; to provide for related matters; to provide effective dates;
18  to repeal conflicting laws; and for other purposes.

19       BE IT ENACTED BY THE GENERAL ASSEMBLY OF GEORGIA:

## SECTION 1.

21   Chapter 2 of Title 21 of the Official Code of Georgia Annotated, relating to elections and

22   primaries generally, is amended in Code Section 21-2-30, relating to creation, membership,

23   terms of service, vacancies, quorum, bylaws, meetings, and executive director, by revising

24   subsections (d) and (f) as follows:

25       "(d)  ~~The Secretary of State shall be an ex officio nonvoting member of the board.~~  Three

26       voting members of the board shall constitute a quorum, and no vacancy on the board shall

27       impair the right of the quorum to exercise all the powers and perform all the duties of the

28       board.  The board shall adopt a seal for its use and bylaws for its own government and

29       procedure."

30       "(f)  If any member of the board~~, other than the Secretary of State,~~ shall qualify as a

31       candidate for any public office which is to be voted upon in any primary or election

32       regulated by the board, that member's position on the board shall be immediately vacated

33       and such vacancy shall be filled in the manner provided for filling other vacancies on the

34       board."

## SECTION 2.

36   Said chapter is further amended in Code Section 21-2-35, relating to emergency rules and

37   regulations, imminent peril requirement, and procedures, by revising paragraph (2) of

38   subsection (a) as follows:

39       "(2)  Immediately upon the setting of the date and time of the meeting at which such

40       emergency rule or regulation is to be considered give notice by email of its intended

41       action to:

42         (A)  The Governor;

43         (B)  The Lieutenant Governor;

44    (C)  The Speaker of the House of Representatives;

45    (D)   The chairpersons of the standing committees of each house of the General

46    Assembly tasked with election matters;

47    (E)  The Secretary of State;

48    (E)(F)  Legislative counsel; and

49    (F)(G)   The chief executive officer of each political party registered pursuant to

50    subsection (a) of Code Section 21-2-110; and"


51                          **SECTION 3.**

52    Said chapter is further amended by adding a new Code section to read as follows:

53    "21-2-19.

54    (a)  As used in this Code section, the term:

55    (1)  'Business' means any corporation, partnership, proprietorship, firm, enterprise,

56    franchise, association, organization, self-employed individual, trust, or other legal entity.

57    (2)  'Family' means spouse and dependents.

58    (3) 'Full-time' means 30 hours of work for the state per week for more than 26 weeks per

59    calendar year.

60    (4)  'Part-time' means any amount of work other than full-time work.

61    (5)  'Substantial interest' means the direct or indirect ownership of more than 5 percent

62    of the assets or stock of any business.

63    (6)   'Transact business' or 'transact any business' means to sell or lease any personal

64    property, real property, or services on behalf of oneself or on behalf of any third party as

65    an agent, broker, dealer, or representative and to purchase surplus real or personal

66    property on behalf of oneself or on behalf of any third party as an agent, broker, dealer,

67    or representative.

68    (b)  In addition to and notwithstanding any contrary provisions of Chapter 10 of Title 45,

69    it shall be unlawful for any member of the State Board of Elections, the Secretary of State,

70   a county or municipal superintendent or registrar, or any full-time, part-time, or contractual
71   employee of such officer or official, for himself or herself or on behalf of any business, or
72   for any business in which such officer, official, or employee or member of his or her family
73   has a substantial interest to transact any business with a business that has contracted with
74   the state, or any county or municipal government, to provide goods or services related to
75   voting equipment or any other equipment related to the tabulation, auditing, processing, or
76   scanning of ballots."

77                                      **SECTION 3.1.**
78   Code Section 21-2-172 of the Official Code of Georgia Annotated, relating to nomination
79   of presidential electors and candidates of political bodies by convention, is amended by
80   adding a new subsection to read as follows:
81   "(g)  Notwithstanding any provision of law to the contrary, any political party or political
82   body which has obtained ballot access in no fewer than 20 states or territories for the office
83   of presidential elector shall be allowed to qualify candidates for presidential elector and
84   receive access to the general election ballot for the purpose of election of the office of
85   presidential elector."

86                                       **SECTION 4.**
87   Said chapter is further amended by revising Code Section 21-2-217, relating to rules for
88   determining residence, as follows:
89   "21-2-217.
90   (a)  In determining the residence of a person desiring to register to vote or to qualify to run
91   for elective office, the following rules shall be followed so far as they are applicable:
92   (1)  The residence of any person shall be held to be in that place in which such person's
93   habitation is fixed, without any present intention of removing therefrom;

| | |
|---|---|
| 94 | (1.1)  The mailing address for election purposes of any person of this state who is |
| 95 | homeless and without a permanent address shall be the registrar's office of the county in |
| 96 | which such person resides; |
| 97 | (2) A person shall not be considered to have lost such person's residence who leaves such |
| 98 | person's home and goes into another state or county or municipality in this state, for |
| 99 | temporary purposes only, with the intention of returning, unless such person shall register |
| 100 | to vote or perform other acts indicating a desire to change such person's citizenship and |
| 101 | residence; provided, however, that: |
| 102 | (A)  If a person registers to vote in another state, county, municipality, or legislative |
| 103 | district of any type or sort, that person shall be deemed to have changed his or her |
| 104 | residency; |
| 105 | (B) If a person returns to his or her original or new residence after voting or registering |
| 106 | to vote in a different or separate jurisdiction, such person shall update their voter |
| 107 | registration with their current residency jurisdiction in order to be deemed a valid |
| 108 | registered elector and resident of such jurisdiction for voting purposes; and |
| 109 | (C) Proof of ownership or rental of a post office box or private mailbox service address |
| 110 | within a particular jurisdiction shall not constitute sufficient grounds to establish a |
| 111 | person's residency within that particular jurisdiction; |
| 112 | (3)  A person shall not be considered to have gained a residence in any county or |
| 113 | municipality of this state into which such person has come for temporary purposes only |
| 114 | without the intention of making such county or municipality such person's permanent |
| 115 | place of abode; |
| 116 | (4)  If a person removes to another state with the intention of making it such person's |
| 117 | residence, such person shall be considered to have lost such person's residence in this |
| 118 | state; |

119   (4.1)  If a person removes to another county or municipality in this state with the
120   intention of making it such person's residence, such person shall be considered to have
121   lost such person's residence in the former county or municipality in this state;

122   (5)  If a person removes to another state with the intention of remaining there an
123   indefinite time and making such state such person's place of residence, such person shall
124   be considered to have lost such person's residence in this state, notwithstanding that such
125   person may intend to return at some indefinite future period;

126   (6)  If a person removes to another county or municipality within this state with the
127   intention of remaining there an indefinite time and making such other county or
128   municipality such person's place of residence, such person shall be considered to have
129   lost such person's residence in the former county or municipality, notwithstanding that
130   such person may intend to return at some indefinite future period;

131   (7)  The residence for voting purposes of a person shall not be required to be the same as
132   the residence for voting purposes of his or her spouse;

133   (8)  No person shall be deemed to have gained or lost a residence by reason of such
134   person's presence or absence while enrolled as a student at any college, university, or
135   other institution of learning in this state;

136   (9)  The mere intention to acquire a new residence, without the fact of removal, shall
137   avail nothing; neither shall the fact of removal without the intention;

138   (10)  No member of the armed forces of the United States shall be deemed to have
139   acquired a residence in this state by reason of being stationed on duty in this state;

140   (11)  If a person removes to the District of Columbia or other federal territory, another
141   state, or foreign country to engage in government service, such person shall not be
142   considered to have lost such person's residence in this state during the period of such
143   service; and the place where the person resided at the time of such person's removal shall
144   be considered and held to be such person's place of residence;

145      (12)  If a person is adjudged mentally ill and is committed to an institution for the
146      mentally ill, such person shall not be considered to have gained a residence in the county
147      in which the institution to which such person is committed is located;

148      (13)  If a person goes into another state and while there exercises the right of a citizen by
149      voting, such person shall be considered to have lost such person's residence in this state;

150      (14)  The specific address in the county or municipality in which a person has declared
151      a homestead exemption, if a homestead exemption has been claimed, shall be deemed the
152      person's residence address; and

153      (15)  For voter registration purposes, the board of registrars and, for candidacy residency
154      purposes, the Secretary of State, election superintendent, or hearing officer may consider
155      evidence of where the person receives significant mail such as personal bills and any
156      other evidence that indicates where the person resides.

157    (b)  In determining a voter's qualification to register and vote, the registrars to whom such
158    application is made shall consider, in addition to the applicant's expressed intent, any
159    relevant circumstances determining the applicant's residence.  The registrars taking such
160    registration may consider the applicant's financial independence, business pursuits,
161    employment, income sources, residence for income tax purposes, age, marital status,
162    residence of parents, spouse, and children, if any, leaseholds, sites of personal and real
163    property owned by the applicant, motor vehicle and other personal property registration,
164    National Change of Address program information sponsored by the United States Postal
165    Service, and other such factors that the registrars may reasonably deem necessary to
166    determine the qualification of an applicant to vote in a primary or election.  The decision
167    of the registrars to whom such application is made shall be presumptive evidence of a
168    person's residence for voting purposes."

169 **SECTION 5.**

170 Said chapter is further amended by revising subsection (b) of Code Section 21-2-230, relating

171 to challenge of persons on list of electors by other electors, procedure, hearing, and right of

172 appeal, and by adding a new subsection to read as follows:

173 "(b)  Upon the filing of such challenge, the board of registrars shall immediately consider

174 such challenge and determine whether probable cause exists to sustain such challenge.  If

175 the registrars do not find probable cause, the challenge shall be denied.  If the registrars

176 find probable cause, the registrars shall notify the poll officers of the challenged elector's

177 precinct or, if the challenged elector voted by absentee ballot, notify the poll officers at the

178 absentee ballot precinct and, if practical, notify the challenged elector and afford such

179 elector an opportunity to answer.  <u>Probable causes shall include, but not be limited to, an</u>

180 <u>elector who is deceased; an elector voting or registering to vote in a different jurisdiction;</u>

181 <u>an elector obtaining a homestead exemption in a different jurisdiction; or an elector being</u>

182 <u>registered at a nonresidential address  as confirmed or listed by or in a government office,</u>

183 <u>data base, website, or publicly available sources derived solely from such governmental</u>

184 <u>sources.  If a challenged elector's name appears on the National Change of Address data</u>

185 <u>base, as maintained by the United States Postal Service, as having changed such elector's</u>

186 <u>residence to a different jurisdiction, the presence of such elector's name on such data base</u>

187 <u>shall be insufficient cause to sustain the challenge against the elector unless additional</u>

188 <u>evidence would indicate that the elector has lost his or her residency as determined</u>

189 <u>pursuant to Code Section 21-2-217; provided, however, that:</u>

190 <u>(1)  Any challenge of an elector within 45 days of a primary, run-off primary, election,</u>

191 <u>or run-off election shall be postponed until the certification of such primary, election, or</u>

192 <u>runoff is completed; and</u>

193 <u>(2)  Any challenge of an elector who is determined eligible pursuant to the residency</u>

194 <u>determinations provided for in paragraph (8), (10), or (11) of subsection (a) of Code</u>

195 <u>Section 21-2-217 shall be deemed insufficient to sustain such challenge.</u>"

196    "(k)  Any challenge of an elector that occurs during a primary or general election shall
197    continue through the run-off primary or run-off election of such primary or general
198    election."

199                                        **SECTION 6.**
200    Said chapter is further amended in Code Section 21-2-300, relating to provision of new
201    voting equipment by state, uniform system for all elections to be conducted with the use of
202    scanning ballots marked by electronic ballot markers, pilot programs, county responsibilities,
203    education, and county and municipal contracts for equipment, by adding a new subsection
204    to read as follows:
205    "(f)(1)  Notwithstanding any provision of this Code section to the contrary, provided that
206    the county election superintendent has petitioned and received the approval of the State
207    Election Board at least 10 days prior to the beginning of advance voting, in any election
208    with less than 5,000 registered electors, such superintendent may provide the electors
209    physical ballots on the same type of ballot that is used for absentee ballots pursuant to
210    subsection (a) of Code Section 21-2-383 and allow electors to mark their ballot using a
211    pen, pencil, or similar non-electronic writing tool as an alternative to using electronic
212    ballot marking devices.
213    (2)  Such physical ballots may only be used to conduct:
214      (A)  Special primaries, special elections, or runoffs thereof for county offices; or
215      (B)  Special elections to present a question to the voters of a county.
216    Furthermore, such primary, special primary, election, or special election shall occur
217    independently and apart from a presidential preference primary, state-wide general
218    primary, state-wide special primary, state-wide general election, or state-wide special
219    election."

220 **SECTION 7.**

221 Said chapter is further amended in Code Section 21-2-379.23, relating to requirements for

222 ballot display, role of Secretary of State, and printed paper ballot controls during recount, by

223 revising subsection (d) as follows:

224 ″(d)  The <u>text portion of the</u> paper ballot marked and printed by the electronic ballot marker

225 <u>indicating the elector's selection</u> shall constitute the official ballot and shall ~~be used for, and~~

226 ~~govern the result in,~~ <u>constitute the official vote for purposes of vote tabulation,</u> any recount

227 conducted pursuant to Code Section 21-2-495<u>,</u> and any audit conducted pursuant to Code

228 Section 21-2-498.  <u>The official tabulation count of any ballot scanner shall be based upon</u>

229 <u>the text portion or the machine mark, provided that such mark clearly denotes the elector's</u>

230 <u>selection and does not use a QR code, bar code, or similar coding, of such ballots and not</u>

231 <u>any machine coding that may be printed on such ballots.</u>″

232 **SECTION 8.**

233 Said chapter is further amended in Code Section 21-2-386, relating to safekeeping,

234 certification, and validation of absentee ballots, rejection of ballot, delivery of ballots to

235 location designated by superintendent, duties of superintendent and managers, precinct

236 returns, report of returns of verified and accepted absentee ballots cast as soon as possible

237 following closing of polls, notification of challenged elector, and unlawful disclosure of

238 tabulation results, by revising paragraph (3) of subsection (a) as follows:

239 ″(3)  A county election superintendent may, in his or her discretion, after 7:00 A.M. on

240 the day of the primary, election, or runoff begin tabulating the absentee ballots<u>; provided,</u>

241 <u>however, that all absentee ballots that have been verified and accepted pursuant to</u>

242 <u>subparagraph (a)(1)(B) of this Code section by the Monday prior to the day of the</u>

243 <u>primary, election, or runoff  shall be tabulated and the results reported by no later than</u>

244 <u>8:00 P.M. on the day of such primary, election, or runoff or within one hour of the</u>

245 <u>closing of all polls in such county, whichever occurs later.</u>  If the county election

246 superintendent chooses to open the inner envelopes and begin tabulating such ballots
247 prior to the close of the polls on the day of the primary, election, or runoff, the
248 superintendent shall notify in writing, at least seven days prior to the primary, election,
249 or runoff, the Secretary of State of the superintendent's intent to begin the absentee ballot
250 tabulation prior to the close of the polls.  The county executive committee or, if there is
251 no organized county executive committee, the state executive committee of each political
252 party and political body having candidates whose names appear on the ballot for such
253 election in such county shall have the right to designate two persons and each
254 independent and nonpartisan candidate whose name appears on the ballot for such
255 election in such county shall have the right to designate one person to act as monitors for
256 such process.  In the event that the only issue to be voted upon in an election is a
257 referendum question, the superintendent shall also notify in writing the chief judge of the
258 superior court of the county who shall appoint two electors of the county to monitor such
259 process."

## SECTION 9.

261 Said chapter is further amended by revising Code Section 21-2-386, relating to safekeeping,
262 certification, and validation of absentee ballots, rejection of ballot, delivery of ballots to
263 location designated by superintendent, duties of superintendent and managers, precinct
264 returns, report of returns of verified and accepted absentee ballots cast as soon as possible
265 following closing of polls, notification of challenged elector, and unlawful disclosure of
266 tabulation results, as follows:

267 "21-2-386.

268 (a)(1)(A)  The board of registrars or absentee ballot clerk shall keep safely, unopened,
269 and stored in a manner that will prevent tampering and unauthorized access to and shall
270 document authorized access to all official absentee ballots received from absentee

271  electors prior to the closing of the polls on the day of the primary or election except as
272  otherwise provided in this subsection.

273  (B)  Upon receipt of each ballot, a registrar or clerk shall write the day and hour of the
274  receipt of the ballot on its envelope.  The registrar or clerk shall then compare the
275  number of the elector's Georgia driver's license number or state identification card
276  issued pursuant to Article 5 of Chapter 5 of Title 40 and date of birth entered on the
277  absentee ballot envelope with the same information contained in the elector's voter
278  registration records.  If the elector has affirmed on the envelope that he or she does not
279  have a Georgia driver's license or state identification card issued pursuant to Article 5
280  of Chapter 5 of Title 40, the registrar or clerk shall compare the last four digits of the
281  elector's social security number and date of birth entered on the envelope with the same
282  information contained in the elector's voter registration records.  The registrar or clerk
283  shall also confirm that the elector signed the oath and the person assisting the elector,
284  if any, signed the required oath.  If the elector has signed the elector's oath, the person
285  assisting has signed the required oath, if applicable, and the identifying information
286  entered on the absentee ballot envelope matches the same information contained in the
287  elector's voter registration record, the registrar or clerk shall so certify by signing or
288  initialing his or her name below the voter's oath.  Each elector's name so certified shall
289  be listed by the registrar or clerk on the numbered list of absentee voters prepared for
290  his or her precinct.  All accepted absentee ballots shall be securely stored in either a
291  sealed container or appropriately secured in an access controlled room that will prevent
292  tampering or unauthorized access prior to the scanning of such ballots.

293  (C)  If the elector has failed to sign the oath, or if the identifying information entered
294  on the absentee ballot envelope does not match the same information appearing in the
295  elector's voter registration record, or if the elector has failed to furnish required
296  information or information so furnished does not conform with that on file in the
297  registrar's or clerk's office, or if the elector is otherwise found disqualified to vote, the

298    registrar or clerk shall write across the face of the envelope 'Rejected,' giving the reason

299    therefor.  The board of registrars or absentee ballot clerk shall promptly notify the

300    elector of such rejection, a copy of which notification shall be retained in the files of

301    the board of registrars or absentee ballot clerk for at least two years.  Such elector shall

302    have until the end of the period for verifying provisional ballots contained in

303    subsection (c) of Code Section 21-2-419 to cure the problem resulting in the rejection

304    of the ballot.  The elector may cure a failure to sign the oath, nonmatching identifying

305    information, or missing information by submitting an affidavit to the board of registrars

306    or absentee ballot clerk along with a copy of one of the forms of identification

307    enumerated in subsection (c) of Code Section 21-2-417 before the close of such period.

308    The affidavit shall affirm that the ballot was submitted by the elector, is the elector's

309    ballot, and that the elector is registered and qualified to vote in the primary, election,

310    or runoff in question.  If the board of registrars or absentee ballot clerk finds the

311    affidavit and identification to be sufficient, the absentee ballot shall be counted.

312    (D) An elector who registered to vote by mail, but did not comply with subsection (c)

313    of Code Section 21-2-220, and who votes for the first time in this state by absentee

314    ballot shall include with his or her application for an absentee ballot or in the outer oath

315    envelope of his or her absentee ballot either one of the forms of identification listed in

316    subsection (a) of Code Section 21-2-417 or a copy of a current utility bill, bank

317    statement, government check, paycheck, or other government document that shows the

318    name and address of such elector.  If such elector does not provide any of the forms of

319    identification listed in this subparagraph with his or her application for an absentee

320    ballot or with the absentee ballot, such absentee ballot shall be deemed to be a

321    provisional ballot and such ballot shall only be counted if the registrars are able to

322    verify current and valid identification of the elector as provided in this subparagraph

323    within the time period for verifying provisional ballots pursuant to Code

324    Section 21-2-419.  The board of registrars or absentee ballot clerk shall promptly notify

325  the elector that such ballot is deemed a provisional ballot and shall provide information
326  on the types of identification needed and how and when such identification is to be
327  submitted to the board of registrars or absentee ballot clerk to verify the ballot.

328  (E)  Three copies of the numbered list of voters shall also be prepared for such rejected
329  absentee electors, giving the name of the elector and the reason for the rejection in each
330  case.  Three copies of the numbered list of certified absentee voters and three copies of
331  the numbered list of rejected absentee voters for each precinct shall be turned over to
332  the poll manager in charge of counting the absentee ballots and shall be distributed as
333  required by law for numbered lists of voters.

334  (F)  All absentee ballots returned to the board or absentee ballot clerk after the closing
335  of the polls on the day of the primary or election shall be safely kept unopened by the
336  board or absentee ballot clerk and then transferred to the appropriate clerk <u>with the</u>
337  <u>documentation provided for in subparagraph (a)(1)(A) of this Code section</u> for storage
338  <u>in a manner that will prevent tampering</u> for the period of time required for the
339  preservation of ballots used at the primary or election and shall then, without being
340  opened, be destroyed in like manner as the used ballots of the primary or election.  The
341  board of registrars or absentee ballot clerk shall promptly notify the elector by
342  first-class mail that the elector's ballot was returned too late to be counted and that the
343  elector will not receive credit for voting in the primary or election.  All such late
344  absentee ballots shall be delivered to the appropriate clerk and stored as provided in
345  Code Section 21-2-390.

346  (G)  Notwithstanding any provision of this chapter to the contrary, until the United
347  States Department of Defense notifies the Secretary of State that the Department of
348  Defense has implemented a system of expedited absentee voting for those electors
349  covered by this subparagraph, absentee ballots cast in a primary, election, or runoff by
350  eligible absentee electors who reside outside the county or municipality in which the
351  primary, election, or runoff is held and are members of the armed forces of the United

352  States, members of the merchant marine of the United States, spouses or dependents of
353  members of the armed forces or merchant marine residing with or accompanying such
354  members, or overseas citizens that are postmarked by the date of such primary, election,
355  or runoff and are received within the three-day period following such primary, election,
356  or runoff, if proper in all other respects, shall be valid ballots and shall be counted and
357  included in the certified election results.

358  (2)(A)  Beginning at 8:00 A.M. on the third Monday prior to the day of the primary,
359  election, or runoff, the election superintendent shall be authorized to open the outer oath
360  envelope of absentee ballots that have been verified and accepted pursuant to
361  subparagraph (a)(1)(B) of this Code section, remove the contents of such outer
362  envelope, open the inner envelope marked 'Official Absentee Ballot,' and scan the
363  absentee ballot using one or more ballot scanners.  At least three persons who are
364  registrars, deputy registrars, poll workers, or absentee ballot clerks ~~must~~ shall be present
365  before commencing; and three persons who are registrars, deputy registrars, or absentee
366  ballot clerks shall be present at all times while the sealed containers containing verified
367  and accepted absentee ballots are unsealed and verified for integrity, while the absentee
368  ballot envelopes are ~~being~~ opened, and while the absentee ballots are ~~being~~ scanned.
369  However, no person shall tally, tabulate, estimate, or attempt to tally, tabulate, or
370  estimate or cause the ballot scanner or any other equipment to produce any tally or
371  tabulate, partial or otherwise, of the absentee ballots cast until the time for the closing
372  of the polls on the day of the primary, election, or runoff except as provided in this
373  Code section.  Prior to beginning the process set forth in this paragraph, the
374  superintendent shall provide written notice to the Secretary of State in writing at least
375  seven days prior to processing and scanning absentee ballots.  Such notice shall contain
376  the dates, start and end times, and location or locations where absentee ballots will be
377  processed and scanned.  The superintendent shall also post such notice publicly in a
378  prominent location in the superintendent's office and on the home page of the county

379    election superintendent's website, if the county election superintendent maintains such
380    a website.  The Secretary of State shall publish on his or her website the information
381    he or she receives from superintendents stating the dates, times, and locations where
382    absentee ballots will be processed.

383    (B)  The proceedings set forth in this paragraph shall be open to the view of the public,
384    but no person except one employed and designated by the superintendent shall touch
385    any ballot or ballot container.   Any person involved in processing and scanning
386    absentee ballots shall swear an oath, in the same form as the oath for poll officers
387    provided in Code Section 21-2-95, prior to beginning the processing and scanning of
388    absentee ballots.  The county executive committee or, if there is no organized county
389    executive committee, the state executive committee of each political party and political
390    body having candidates whose names appear on the ballot for such election shall have
391    the right to designate two persons and each independent and nonpartisan candidate
392    whose name appears on the ballot for such election shall have the right to designate one
393    person to act as monitors for such process.  In the event that the only issue to be voted
394    upon in an election is a referendum question, the superintendent shall also notify in
395    writing the chief judge of the superior court of the county who shall appoint two
396    electors of the county to monitor such process.   While viewing or monitoring the
397    process set forth in this paragraph, monitors and observers shall be prohibited from:

398    (i)  In any way interfering with the processing or scanning of absentee ballots or the
399    conduct of the election;

400    (ii)  Using or bringing into the room any photographic or other electronic monitoring
401    or recording devices, cellular telephones, or computers;

402    (iii)  Engaging in any form of campaigning or campaign activity;

403    (iv)  Taking any action that endangers the secrecy and security of the ballots;

404    (v)  Touching any ballot or ballot container;

405      (vi)  Tallying, tabulating, estimating, or attempting to tally, tabulate, or estimate,

406      whether partial or otherwise, any of the votes on the absentee ballots cast; and

407      (vii)  Communicating any information that they see while monitoring the processing

408      and scanning of the absentee ballots, whether intentionally or inadvertently, about any

409      ballot, vote, or selection to anyone other than an election official who needs such

410      information to lawfully carry out his or her official duties.

411    (C)    The State Election Board shall promulgate rules requiring reconciliation

412    procedures; prompt and undelayed scanning of ballots after absentee ballot envelopes

413    are opened; secrecy of election results prior to the closing of the polls on the day of a

414    primary, election, or runoff; and other protections to protect the integrity of the process

415    set forth in this paragraph.

416    (D)  At the conclusion of the scanning of ballots, such scanned ballots shall be stored

417    in tamper-resistant containers sealed with numbered seals, the number of which shall

418    be recorded on the chain of custody document specified by the Secretary of State, and

419    such forms shall be signed by the person storing the ballots and the date and time of

420    storage shall be entered on such forms.

421    (3) A county election superintendent may, in his or her discretion, after 7:00 A.M. on the

422    day of the primary, election, or runoff begin tabulating the absentee ballots; provided,

423    however, that all absentee ballots that have been verified and accepted pursuant to

424    subparagraph (a)(1)(B) of this Code section by the Monday prior to the day of the

425    primary, election, or runoff  shall be tabulated and the results reported by no later than

426    8:00 P.M. on the day of such primary, election, or runoff or within one hour of the

427    closing of all polls in such county, whichever occurs later.  If the county election

428    superintendent chooses to open the inner envelopes and begin tabulating such ballots

429    prior to the close of the polls on the day of the primary, election, or runoff, the

430    superintendent shall notify in writing, at least seven days prior to the primary, election,

431    or runoff, the Secretary of State of the superintendent's intent to begin the absentee ballot

432    tabulation prior to the close of the polls.  The county executive committee or, if there is

433    no organized county executive committee, the state executive committee of each political

434    party and political body having candidates whose names appear on the ballot for such

435    election in such county shall have the right to designate two persons and each

436    independent and nonpartisan candidate whose name appears on the ballot for such

437    election in such county shall have the right to designate one person to act as monitors for

438    such process.  In the event that the only issue to be voted upon in an election is a

439    referendum question, the superintendent shall also notify in writing the chief judge of the

440    superior court of the county who shall appoint two electors of the county to monitor such

441    process.

442    (4)   The county election superintendent shall publish a written notice in the

443    superintendent's office of the superintendent's intent to begin the absentee ballot

444    tabulation prior to the close of the polls and publish such notice at least one week prior

445    to the primary, election, or runoff in the legal organ of the county.

446    (5)  The process for opening absentee ballot envelopes, scanning absentee ballots, and

447    tabulating absentee ballots on the day of a primary, election, or runoff as provided in this

448    subsection shall be conducted in a manner to maintain the secrecy of all ballots and to

449    protect the disclosure of any balloting information before 7:00 P.M. on election day.  No

450    absentee ballots shall be tabulated before 7:00 A.M. on the day of a primary, election, or

451    runoff.

452    (6) All persons conducting the tabulation of absentee ballots during the day of a primary,

453    election, or runoff, including the vote review panel required by Code Section 21-2-483,

454    and all monitors and observers shall be sequestered until the time for the closing of the

455    polls.  All such persons shall have no contact with the news media; shall have no contact

456    with other persons not involved in monitoring, observing, or conducting the tabulation;

457    shall not use any type of communication device including radios, telephones, and cellular

458    telephones; shall not utilize computers for the purpose of email, instant messaging, or

459    other forms of communication; and shall not communicate any information concerning

460    the tabulation until the time for the closing of the polls; provided, however, that

461    supervisory and technical assistance personnel shall be permitted to enter and leave the

462    area in which the tabulation is being conducted but shall not communicate any

463    information concerning the tabulation to anyone other than the county election

464    superintendent; the staff of the superintendent; those persons conducting, observing, or

465    monitoring the tabulation; and those persons whose technical assistance is needed for the

466    tabulation process to operate.

467    (7)  The absentee ballots shall be tabulated in accordance with the procedures of this

468    chapter for the tabulation of absentee ballots.  As such ballots are tabulated, they shall be

469    placed into locked ballot boxes and may be transferred to locked ballot bags, if needed,

470    for security.  <u>Such boxes or bags shall be sealed and witnessed and verified by each</u>

471    <u>person taking custody of such items by each such person's signature and date and time</u>

472    <u>of taking custody.</u>  The persons conducting the tabulation of the absentee ballots shall not

473    cause the tabulating equipment to produce any count, partial or otherwise, of the absentee

474    votes cast until the time for the closing of the polls except as otherwise provided in this

475    Code section.

476    (b)  When requested by the superintendent, but not earlier than the third Monday prior to

477    a primary, election, or runoff, a registrar or absentee ballot clerk shall deliver the official

478    absentee ballot of each certified absentee elector, each rejected absentee ballot, applications

479    for such ballots, and copies of the numbered lists of certified and rejected absentee electors

480    to the location designated by the superintendent <u>in secure, sealed containers with the chain</u>

481    <u>of custody documents as specified by the Secretary of State and the signature and date and</u>

482    <u>time of the person taking custody</u>, and the superintendent or official receiving such

483    absentee ballots shall issue his or her receipt therefor.

484    (c) The superintendent shall cause the verified and accepted absentee ballots to be opened

485    and tabulated as provided in this Code section.  A manager shall then open the outer

486   envelope in such manner as not to destroy the oath printed thereon and shall deposit the
487   inner envelope marked 'Official Absentee Ballot' in a ballot box reserved for absentee
488   ballots <u>with an accompanying chain of custody documentation.  Such ballot box shall be</u>
489   <u>securely sealed if it is not in the direct control of the poll officers or if it is transferred to</u>
490   <u>a different room or facility for tabulation</u>.  In the event that an outer envelope is found to
491   contain an absentee ballot that is not in an inner envelope, the ballot shall be sealed in an
492   inner envelope, initialed and dated by the person sealing the inner envelope, and deposited
493   in the ballot box and counted in the same manner as other absentee ballots, provided that
494   such ballot is otherwise proper.  Such manager with two assistant managers, appointed by
495   the superintendent, with such clerks as the manager deems necessary shall count the
496   absentee ballots following the procedures prescribed by this chapter for other ballots,
497   insofar as practicable.

498   (d)  All absentee ballots shall be counted and tabulated in such a manner that returns may
499   be reported by precinct; and separate returns shall be made for each precinct in which
500   absentee ballots were cast showing the results by each precinct in which the electors reside.
501   The superintendent shall utilize the procedures set forth in this Code section to ensure that
502   the returns of verified and accepted absentee ballots cast are reported to the public as soon
503   as possible following the closing of the polls on the day of the primary, election, or runoff.
504   Failure to utilize these procedures to ensure that the returns of verified and accepted
505   absentee ballots are reported as soon as possible following the close of polls shall subject
506   the superintendent to sanctions by the State Election Board.  If a superintendent fails to
507   report the returns of verified and accepted absentee ballots by the day following the
508   election at 5:00 P.M., the State Election Board may convene an independent performance
509   review board pursuant to Code Section 21-2-107.

510   (e)  If an absentee elector's right to vote has been challenged for cause, a poll officer shall
511   write 'Challenged,' the elector's name, and the alleged cause of challenge on the outer
512   envelope and shall deposit the ballot in a secure, sealed ballot box <u>for which there shall be</u>

513    a chain of custody document as specified by the Secretary of State on which is recorded

514    and witnessed the name and signature of each person taking custody of such ballots; and

515    it shall be counted as other challenged ballots are counted.  Where direct recording

516    electronic voting systems are used for absentee balloting and a challenge to an elector's

517    right to vote is made prior to the time that the elector votes, the elector shall vote on a paper

518    or optical scanning ballot and such ballot shall be handled as provided in this subsection.

519    The board of registrars or absentee ballot clerk shall promptly notify the elector of such

520    challenge.

521    (f)  It shall be unlawful at any time prior to the close of the polls for any person to disclose

522    or for any person to receive any information regarding the results of the tabulation of

523    absentee ballots except as expressly provided by law."


## SECTION 10.

525    Said chapter is further amended in Code Section 21-2-493, relating to computation,

526    canvassing, and tabulation of returns, investigation of discrepancies in vote counts, recount

527    procedure, pilot program for posting of digital images of scanned paper ballots, certification

528    of returns, and change in returns, by revising subsection (a) and adding a new subsection to

529    read as follows:

530    "(a)  The superintendent shall, after the close of the polls on the day of a primary or

531    election, at his or her office or at some other convenient public place at the county seat or

532    in the municipality, of which due notice shall have been given as provided by Code

533    Section 21-2-492, publicly commence the computation and canvassing of the returns and

534    continue until all absentee ballots received by the close of the polls, including those cast

535    by advance voting;; provided, however, that such votes cast by advance voting shall be

536    tabulated and the results reported by no later than 8:00 P.M. on such day or within one hour

537    of the closing of all polls in such county, whichever occurs later, and all ballots cast on the

538    day of the primary or election have been counted and tabulated and the results of such

539  tabulation released to the public and, then, continuing with provisional ballots as provided

540  in Code Sections 21-2-418 and 21-2-419 and those absentee ballots as provided in

541  subparagraph (a)(1)(G) of Code Section 21-2-386 from day to day until completed.  For

542  this purpose, the superintendent may organize his or her assistants into sections, each of

543  whom may simultaneously proceed with the computation and canvassing of the returns

544  from various precincts of the county or municipality in the manner provided by this Code

545  section.  Upon the completion of such computation and canvassing, the superintendent

546  shall tabulate the figures for the entire county or municipality and sign, announce, and

547  attest the same, as required by this Code section."

548  "(j.2)(1) On or after January 1, 2025, in the event that a superintendent receives a request

549  pursuant to Code Section 50-18-71 for scanned ballot images at a resolution higher than

550  the ballot images available from the Secretary of State pursuant to subsection (j.1) of this

551  Code section, and such request is received following the final certification of the results

552  of the election in which such ballots were created, the superintendent shall, consistent

553  with Code Section 50-18-71, produce digital scans of the requested ballots at a resolution

554  of no less than 600 dots per inch and deliver such scans to the requestor.  A person

555  making a request pursuant to this subsection may observe the scanning and related

556  handling process, but under no circumstances shall anyone other than an authorized

557  election official touch or handle a physical ballot.

558  (2)  Notwithstanding any seal provided for by Code Section 21-2-500, a superintendent

559  shall have access to the ballots cast within its jurisdiction so as to comply with the

560  provisions of this subsection.  Upon receiving a request pursuant to this subsection, the

561  superintendent shall notify the clerk of the superior court or, if designated by the clerk of

562  the superior court, the county records manager or other office or official under the

563  jurisdiction of a county governing authority which maintains or is responsible for

564  maintaining such sealed ballots, and such official or office that maintains such requested

565  ballot shall provide the superintendent access to such ballot without the need for

566    obtaining a court order.  All ballots provided to a superintendent pursuant to this
567    paragraph shall be immediately returned by such superintendent to the official or office
568    that maintains such ballots upon the scanning of such ballot."

569                                    **SECTION 11.**

570    Said chapter is further amended by adding a new Code section to read as follows:

571    "21-2-498.1.

572    The Secretary of State shall create a pilot program for the auditing of paper ballot images
573    using optical character recognition technology or other related technology which shall
574    verify the human-readable text portion of the ballot.  Such auditing program shall not be
575    based on or tabulate any QR code, bar code, or similar machine coding that may be printed
576    on such ballots.  Such audits shall include all ballot types, and the audit findings shall be
577    reported prior to final certification of the election."

578                                    **SECTION 12.**

579    Said chapter is further amended in Code Section 21-2-540, relating to conduct of special
580    primaries and special elections generally, by revising subsection (b) as follows:

581    "(b)  At least 29 days shall intervene between the call of a special primary and the holding
582    of same, and at least 29 days shall intervene between the call of a special election and the
583    holding of same.  The period during which candidates may qualify to run in a special
584    primary or a special election shall remain open for a minimum of two and one-half days.
585    Special ~~primaries and special~~ elections to present questions to the voters which are to be
586    held in conjunction with the presidential preference primary, a state-wide general primary,
587    or state-wide general election shall be called at least 90 days prior to the date of such
588    presidential preference primary, state-wide general primary, or state-wide general election;
589    provided, however, that this requirement shall not apply to ~~special primaries and~~ special
590    elections to present questions to the voters held on the same date as such presidential

                                         - 23 -

591    preference primary, state-wide general primary, or state-wide general election but

592    conducted completely separate and apart from such state-wide general primary or

593    state-wide general election using different ballots or voting equipment, facilities, poll

594    workers, and paperwork."

595    **SECTION 13.**

596    (a) This section and Sections 12 and 14 of this Act shall become effective upon its approval

597    by the Governor or upon its becoming law without such approval.

598    (b) Sections 1, 2, 3, 3.1, 5, 8, 10, and 11 of this Act shall become effective on July 1, 2024.

599    (c) Sections 4, 6, and 9 of this Act shall become effective on January 1, 2025.

600    (d) Section 7 of this Act shall become effective on July 1, 2026.

601    **SECTION 14.**

602    All laws and parts of laws in conflict with this Act are repealed. All laws and parts of laws

603    in conflict with this Act are repealed.