IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

NEW GEORGIA PROJECT, *et. al.*,

    Plaintiffs,

vs.

BRAD RAFFENSPERGER, in his official capacity as Secretary of State of the State of Georgia, *et. al.*,

    Defendants.

Civil Action No.
1:24-cv-03412-SDG

## COLUMBIA COUNTY DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' COMPLAINT

The Columbia County Defendants moved to dismiss Plaintiffs' Amended Complaint on four grounds. [Doc. 253]. The first three bases of the Motion to Dismiss – that Plaintiffs lack standing to sue the Columbia County Defendants; that the Amended Complaint fails to state a claim upon which relief can be granted; and that Plaintiffs' pre-suit notice is defective – have been fully briefed by the Columbia County Defendants [Doc. 253 at 8-13] and now joined by Plaintiffs [Doc. 265 at 4-10]. The Columbia County Defendants stand on their initial brief as to these issues, and adopt the briefing of its fellow "Seventeen County Board Member Defendants" to the extent any address these issues further in any Reply brief that may be filed.

1

This Reply brief instead will focus on the final argument put forward by the Columbia County Defendants: that the NVRA does not create a private right of action against counties and therefore no cognizable claim can be brought by Plaintiffs against the Columbia County Defendants.

Plaintiffs do not refute, nor can they, that "private rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286, 121 S. Ct. 1151, 149 L. Ed. 2d 517 (2001). Plaintiffs likewise do not refute, nor can they, that "[t]he starting point of statutory construction is to begin 'with the words of the statutory provision.'" *Huff v. Dekalb County*, 516 F.3d 1273, 1280 (11th Cir. 2008) (quoting *Harris v. Garner*, 216 F.3d 970, 972 (11th Cir. 2000) (en banc)). Plaintiffs fail to refute, or even address, the Columbia County Defendants' analysis of the statutory language and history of the NVRA which show the very limited scope of the private remedy created by Congress under that Act [Doc. 253 at 16-23].

Rather than address the language of the Act itself, or the Congressional intent it evidences, Plaintiffs instead argue that the Columbia County Defendants have not shown any case that analyzes the text of the NVRA's private right of action provision (52 U.S.C. § 20510(b)(1)) to determine its proper scope. [Doc. 265 at 12]. And this is true. Plaintiffs' problem, however, is that they fail to do so either because this appears to be an issue of first impression.

2

The cases cited by Plaintiffs certainly do not address the question directly. Plaintiffs first cite to *ACORN v. Scott*, 2008 WL 5272059 (W.D. Mo. Dec. 17, 2008) to show that a private right of action was maintained against a county official by that district court. [Doc. 2655 at 11]. *ACORN* did not concern a motion to dismiss based upon a lack of private right of action, however, but instead related to whether a defendant could compel the joinder of the Missouri Secretary of State as an additional defendant. 2008 WL at *2 -*3. There is absolutely no discussion of the private right of action provision or the canons of statutory construction at all in *ACORN*. The same is true of the other two cases relied upon by Plaintiffs. See *Am. Civil Rights Union v. Martinez-Rivera*, 166 F.Supp.3d 779 (W.D. Tex. 2015) (addressing the standing of plaintiff to assert claims against county tax-collectors); *Scott v. Schedler*, 2013 WL 264603 (E.D. La. Jan. 22, 2013) (addressing the standing of plaintiff to assert claims against state entities). [Doc. 265 at 16-17]. The question of whether Congress expressly or impliedly created a private right of action against counties was not addressed by any of these cases.

Here, Plaintiffs wish to jump right to the question of whether they have standing (traceable injuries) to assert claims against various county defendants. Prior to reaching that issue, however, exists the threshold question and hurdle: *Does the NVRA even provide a private right of action against these county defendants in the first place?* This question must be answered in the negative because the NVRA

3

relates to the obligations of states and not their subdivisions. "[T]he entire Act, including other subsections, speaks in terms of state responsibilities; what is noticeably missing is any mention of county, municipal, or other local authorities." *Harkless v. Brunner*, 545 F.3d 445, 452 (6th Cir. 2008). The reason for the emphasis on state requirements under the NVRA, and not county requirements, is not accidental but rather derives from its legislative history: "Congress grafted the NVRA onto the existing public assistance structure, under which the fifty states, not their political subdivisions, have the ultimate accountability." *Id.*

To be clear, each of the provisions of the NVRA which form the basis of Plaintiffs' claims against the Columbia County Defendants expressly create "State" obligations. Count I of the Amended Complaint alleges a violation of 52 U.S.C. § 20507(d) [Doc. 155 at 95], which prohibits "A State" from certain conduct. Count II and Count IV each allege a violation of 52 U.S.C. § 20507(b) [Doc. 155 at 105], which regulates "Any State program or activity" falling within that provision. Determinatively, the Act expressly defines "the term State" as "a State of the United States and the District of Columbia," without mention of counties or comparable local governments. 52 U.S.C. § 20502(4).

Congress then provided a mechanism by which a private party could address its NVRA injury through an action against a single state officer. Congress expressly required each state to designate a single "chief election official" who is "responsible

4

for coordination of State responsibilities under this Act." 52 U.S.C. § 20509. "Requiring would-be plaintiffs to send notice to their chief election official about ongoing NVRA violations would hardly make sense if that official did not have the authority to remedy NVRA violations." *Harkless* at 453; see also *Scott v. Schedler*, 771 F.3d. 831, 839 (5th Cir. 2014) (quoting same). And similarly, it would hardly make sense for Congress to require the designation of a single state agent to coordinate responsibility for NVRA compliance, and to receive notice of an alleged violation, if Congress instead intended to provide an additional unstated private right of action against any additional party that is allegedly necessary to carry out the purposes of the Act. In fact, we know that cannot be the case from the very text of the NVRA. Compare 52 U.S.C. § 20510(a) (Congress expressly authorizing the Attorney General to bring any action "as is necessary to carry out [the NVRA]" while not expressly providing the same for private rights of action).

Absent textual support for the broad private right of action urged by Plaintiffs, the NVRA claims against Columbia County must be dismissed because the NVRA does not create a private action or remedy against anyone other than a state's chief election official. As the United States Supreme Court has made clear:

> Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress. The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy. Statutory intent on this latter point is determinative. Without it, a cause of action does not exist and courts may not create one, no

5

matter how desirable that might be as a policy matter, or how compatible with the statute. "Raising up causes of action where a statute has not created them may be a proper function for common-law courts, but not for federal tribunals."

*Alexander*, 532 U.S. at 286 (citations omitted); see also *Joseph v. Bd. of Regents of the Univ. Sys. of Ga.*, 121 F.4th 855, 867 (11th Cir. 2024) (even where courts create an implied right of action, "we 'examine the relevant statute to ensure that we do not fashion the scope of an implied right in a manner at odds with the statutory structure and purpose'" of the federal act under review) (quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 374, 284, 118 S. Ct. 1989, 141 L. Ed. 2d 277 (1998)).

Plaintiffs argue that the limited private remedy provided by Congress is not adequate because Georgia state law delegated certain voting actions to various county boards. [Doc. 265 at 11]. However, these state laws do not modify the text of the Congressional Act and its requirement that a single designated state actor remain responsible for compliance with the federal NVRA. While Plaintiffs cite the trial court decision of *Scott* (2013 WL 264603), they fail to cite the Fifth Circuit's decision on appeal which explains why Plaintiffs' position is incorrect:

> [W]e now consider [chief election official] Schedler's argument that we should interpret "coordination" to constitute only the one-time power to implement the NVRA, not an enforcement power. . . .
>
> [W]e hold that "coordination" includes enforcement power for two reasons. First, the NVRA's notice provision, which requires potential plaintiffs to provide notice to the chief election official before filing suit, only makes sense if Schedler has authority to enforce the Act. The purpose of the notice requirement is to give the state the opportunity to

6

remedy NVRA violations. . . . [T]he NVRA's notice requirement shows that the chief election official's role must be ongoing. Such an ongoing role is at odds with Schedler's view that the chief election official can merely instruct state agencies on NVRA compliance and then disappear from the picture.

Second, the NVRA's centralization of compliance responsibility also suggests that the chief elections officer has enforcement power. The NVRA centralizes responsibility in the state and in the chief elections officer, who is the state's stand-in. For example, each state *must* designate a chief elections officer, who will receive complaints about *all* violations of the NVRA. Additionally, the NVRA speaks in terms of the responsibilities of "each state." This choice of words reflects a policy choice that responsibility should be centralized rather than fragmented. . . .

Under Schedler's view, aggrieved parties could sue the state agencies . . . but not the Secretary of State. But the NVRA's centralization of responsibility counsels against such buck passing.

*Scott*, 771 F.3d at 839 (emphasis by Court; citations omitted).

Thus, regardless of any state law which may exist, *the designated chief election official remains responsible under federal law for NVRA compliance and remedy*. Our General Assembly has even codified this singular obligation into law. O.C.G.A. § 21-2-210 ("[t]he Secretary of State is designated as the chief election official to coordinate the responsibilities of this state under the National Voter Registration Act of 1993 (P.L. 103-21) as required by 52 U.S.C. Section 20509").

There thus is no conflict here between federal and Georgia state law in regard to federal NVRA compliance: the buck stops with a single designated state official and does not rest with the 159 diverse counties of the State of Georgia (let alone

with the roughly 3,144 counties and equivalents nationwide). More importantly, it is clear from the text and history of the NVRA that Congress *intended* for a single designated state official from each state to be responsible for ensuring that federal NVRA compliance is met in their respective jurisdictions and for remedying any potential violation. That is exactly why Congress expressly created "State" obligations; expressly required each state to designate which single state official has federal NVRA compliance responsibility; expressly provided that notice of a federal NVRA violation must be sent to that single designated state official prior to any private suit; expressly provided a private right of action against that single designated state official if it failed to remedy the noticed federal NVRA violation; and only referenced that single designated state official as the express target of any private rights of action if it did not remedy the noticed federal NVRA violation (as opposed to authorizing any private action "as is necessary to carry out [the NVRA]").

At its core, there is no textual or historical support put forward by Plaintiffs for the assertion that Congress provided an express private right of action in the NVRA against any party other than the "chief election official" of the State. Nor is there any textual or historical support put forward by Plaintiffs for the assertion that Congress provided a private right of action in the NVRA against counties by necessary implication. To the contrary, the text, structure and history of the NVRA

establishes that the chief election official of the State of Georgia is the only party against whom a private right of action was granted by Congress, and that the chief election official has the ultimate responsibility for NVRA compliance (remedy) under both federal and Georgia state law.

Thus even if Plaintiffs established standing to assert NVRA claims, those claims can only be brought against the sole party for whom a private right of action is provided by Congress – the chief election official of the State of Georgia.

## **Conclusion**

For the foregoing reasons, and the reasons stated in the briefs of others incorporated herein by reference, this Motion to Dismiss filed by the Columbia County Defendants should be granted pursuant to both Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Respectfully submitted this 21st day of April, 2025.

***/s/ William J. Keogh, III***
William J. Keogh, III
Georgia Bar No. 415781
Sydney K. Parish
Georgia Bar. No. 224821
Attorneys for Columbia County

Hull Barrett, PC
801 Broad Street, Suite 7
Augusta, Georgia 30901
wkeogh@hullbarrett.com
sparish@hullbarrett.com

9

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1 AND CERTIFICATE OF SERVICE

I hereby certify that the foregoing document has been prepared in accordance with the font type and margin requirements of Local Rule 5.1 of the Northern District of Georgia, using a font type of Times New Roman and a point size of 14.

I further certify that I have this day electronically filed this Reply Brief in Support of the Columbia County Defendants' Motion to Dismiss with the Clerk of Court using the CM/ECF system which will automatically send email notification to all attorneys of record.

Respectfully submitted this 21st day of April, 2025.

/s/ *William J. Keogh, III*
William J. Keogh, III
Georgia Bar No. 415781
Attorney for Columbia County

Hull Barrett, PC
801 Broad Street, Suite 7
Augusta, Georgia 30901
wkeogh@hullbarrett.com