# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF
# GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| NEW GEORGIA PROJECT, et al.,<br><br>   Plaintiffs,<br><br> v.<br><br>BRAD RAFFENSPERGER, in his official capacity as Georgia Secretary of State, et al.,<br><br>   Defendants. | CIVIL ACTION<br><br>NO. 1:24-CV-03412-SDG |
| GEORGIA STATE CONFERENCE OF THE NAACP, et al,<br><br>   Plaintiffs,<br> v.<br><br>BRAD RAFFENSPERGER, et al.,<br><br>   Defendants. | |
| SECURE FAMILIES INITIATIVE AND THEIR MEMBERS,<br><br>   Plaintiff,<br> v.<br><br>BRAD RAFFENSPERGER, et al.,<br><br>   Defendants. | |

**REPLY IN SUPPORT OF MOTION TO CERTIFY DEFENDANT CLASS**

**INTRODUCTION**

Class certification is the superior method to adjudicate this case efficiently and effectively, and provide the statewide relief sought by Plaintiffs Georgia State Conference of the NAACP, Georgia Coalition for the People's Agenda, VoteRiders, and Secure Families Initiative ("SFI") (collectively "Moving Plaintiffs"), particularly in light of *Jacobson v. Florida Secretary of State*, 974 F.3d 1236, 1253 (11th Cir. 2020). Class certification would be consistent with numerous other cases in this circuit where, as here, Moving Plaintiffs seek injunctive relief against local officials responsible for enforcing a challenged law. *See, e.g.*, *Whitaker v. Perdue*, No. 4:06-CV-0140-CC, 2006 WL 8553739, at *1 (N.D. Ga. Aug. 24, 2006).

The Motion for Class Certification is timely brought and well-supported. State Defendants and Gwinnett County Board of Registrations and Elections (collectively, "Defendants") primarily base their opposition on a misunderstanding of standing in class action cases, threats of hypothetical varying interpretations of a law they are obliged to apply uniformly, and misplaced claims of discretionary authority. Moving Plaintiffs satisfy the requirements of Rules 23(a), (b)(1), and (b)(2), therefore this Court should certify the Moving Plaintiffs' proposed class.

**ARGUMENT**

**I.    The Motion to Certify a Defendant Class Is Timely.**

The Motion for Class Certification is neither premature nor unripe. Moving Plaintiffs submitted their motion to ensure compliance with the Rules. Fed. R. Civ. P. 23(c)(1)(A); Fed. R. Civ. P. 1. The scheduling order set forth in ECF No. 142, and, as amended, ECF No. 275, established a deadline—90 days after all defendants have filed an answer—by which any party must move for class certification under Rule 23, but nothing in the scheduling order prohibits parties from moving before the deadline. *Id*. The same is true of this Court's local rule, which requires parties to move for class certification *within* 90 days of the filing of the complaint, but it does not prohibit an earlier-filed motion or condition class certification on the resolution of any other motions. N.D.Ga. LR 23.1(B).

There are at least three reasons for the Court to consider certifying the defendant class expeditiously. *First*, this case is brought under federal law seeking to protect voting rights of Georgians, and Moving Plaintiffs are obliged to move this litigation forward, just as the Court should consider the timing of upcoming elections in considering Plaintiffs' claims and crafting any relief. *See, e.g.*, *League of Women Voters of Fla., Inc. v. Fla. Sec'y of State*, 32 F.4th 1363, 1371 (11th Cir. 2022); *New Ga. Project v. Raffensperger*, 976 F.3d 1278, 1284 (11th Cir. 2020); *see also* 29 C.J.S. Elections § 459 (2020).

*Second*, Moving Plaintiffs' Motion to Certify a Defendant Class is the most effective way to address the issues raised in the Complaint and resolution of their

motion to certify is separate from the underlying merits of the case. The purpose of deciding a class certification motion "is not to adjudicate the case," but "to select the method best suited to adjudication of the controversy." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 460 (2013) (internal citation omitted). As Moving Plaintiffs explained in their opening brief, Counts I, II, IV, VI, VII, VIII, IX, X, XI, and XII are appropriate for class treatment. ECF No. 319 at 7-8. Even if the Court were to dismiss one or more claims, the motion would still be appropriate.

*Third*, the briefing on this motion followed briefing on the various motions to dismiss, and it will be "submitted to the Court likely prior to all Defendants filing Answers, and well before the timeline contemplated in the initial Scheduling Order." ECF No. 326 at 2-3. Should the Court determine the most expeditious method is to first consider the motions to dismiss, the current posture will permit consideration of class certification in short order, as opposed to requiring several additional months of briefing. Defendants' timeliness arguments are therefore misplaced.

## II.    Moving Plaintiffs Satisfy the Requirements of Article III.

Moving Plaintiffs' injuries are traceable to and redressable by the putative county class, and class certification in this case is consistent with Article III and Eleventh Circuit precedent.[1]

---

[1] Courts may look to the pleadings to determine whether the moving party has met their burden of proof at the pleadings stage of the litigation, particularly before

**A. Moving Plaintiffs' injuries are traceable to and redressable by Georgia's 159 counties.**

Moving Plaintiffs' injuries from S.B. 189 are traceable to and redressable by the putative Class Defendants as to all counts for which they seek class certification because S.B. 189 is a statewide law that all 159 counties enforce.[2] ECF No. 301 at 60-62. Additionally, as Moving Plaintiffs have thoroughly briefed, their injuries are concrete and nonspeculative. ECF No. 304 at 37-54. The Eleventh Circuit and courts within the circuit have consistently certified defendant classes where defendant class members are alleged to have caused, or will cause, a concrete injury to a plaintiff. *Strawser v. Strange*, 307 F.R.D. 604, 611 (S.D. Ala. 2015); *Whitaker*, 2006 WL 8553739, at *4; *Nat'l Broad. Co. v. Cleland*, 697 F. Supp. 1204, 1217 (N.D. Ga. 1988).

Moving Plaintiffs will face injury to their activities that lie at the core of their missions including voter registration, education, and assistance as a result of the defendant class members' enforcement of the challenged provisions of S.B. 189. *See*

---

discovery has been opened. *Rensel v. Centra Tech, Inc.*, 2 F.4th 1359, 1365-66 (11th Cir. 2021); *c.f., Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 41 (N.D. Cal., 1990). If the Court finds more evidence is required to determine whether Fed. R. Civ. P. 23 has been met, Moving Plaintiffs respectfully request this Court hold ruling on the Moving Plaintiffs' Motion in abeyance pending discovery in this matter.

[2] As explained in Plaintiffs' Consolidated Response in Opposition to Defendants' and Intervenors' Motions to Dismiss, Plaintiffs have standing to pursue their claims against the putative Class Defendants and Moving Plaintiffs incorporate those arguments by reference. *See* ECF No. 304 at 60-62.

ECF No. 304 at 37-45. This also includes Plaintiff SFI's injuries arising from Defendants' equal protection violations, like those injuries caused by a lack of uniform enforcement. These injuries are likewise traceable to each county's conduct or lack thereof and can only be redressed by uniform relief across all counties. ECF No. 301 at 60-62.

Moving Plaintiffs are injured by the putative class regardless of whether "all counties have had voter challenges filed against voters" or whether "every county will face issues with homeless voters." *Cf.* ECF No. 328 at 23. That some counties may have not yet implemented S.B. 189 is irrelevant, as "[i]ncluding future class members is no bar to class certification." *Barbara v. Trump*, No. 25-CV-244-JL-AJ, 2025 WL 1904338, at *5 (D.N.H. July 10, 2025). In *Barbara,* the district court— after *Trump v. CASA,* 145 S.Ct. 2540 (2025)—held that including persons in the plaintiff class whose injuries have not yet arisen (because they are persons not yet born) is consistent with Article III because "as soon as they are born, they will join the class and their claims will be ripe." *Barbara*, 2025 WL 1904338, at *5 (collecting cases). Likewise, in *Long,* the plaintiffs had standing to sue all local officials because "they are subject to those judgments." *Doss v. Long,* 93 F.R.D. 112, 114 (N.D. Ga. 1981). As in *Long,* the "plaintiffs may not find themselves" currently subject to all local officials' jurisdiction, but because defendants are "operating under an unconstitutional system, then the injury is ongoing and continuous." *Id.* Class-wide

relief is required to prevent enforcement of a statewide law that applies to all the counties.

### B. Class Certification is Consistent with Article III.

The "question of standing is just one part of a rather complex network of rules regulating class actions, under which the named plaintiff is the critical actor for some purposes, every individual member of the class is relevant for other purposes, and the class as a whole is the focal point for yet other purposes." *Payton v. Cnty. of Kane*, 308 F.3d 673, 681 (7th Cir. 2002); *see also Long*, 93 F.R.D. at 120; *Whitaker*, 2006 WL 8553739, at *1. Defendants' attempt to conjure an Article III problem conflates standing with the requirements of Rule 23(a) and would result in an unworkable standard for class certification.

### 1. *Jacobson* confirms that class-wide relief is available and appropriate.

In *Jacobson*, the Eleventh Circuit clarified that where county election officials are directly responsible for implementing the challenged law, a plaintiff's injuries are traceable to and redressable by those counties. 974 F.3d at 1255-58.[3] Specifically, the court held that the plaintiffs "should have sued the Supervisors of Elections" even where the "approach would have made for more defendants," *id.* at 1258, and even where the plaintiffs did not specifically "identify an injury traceable

---

[3] As Moving Plaintiffs explained in their opening brief, all county officials are proper parties as they enforce, in part, S.B. 189. *See* ECF No. 319 at 11 n. 3.

to and redressable by every board of registrars[.]" ECF No. 328 at 24. *Jacobson* recognized that the plaintiffs' injuries were traceable to and redressable by all counties, because otherwise counties will not be "obliged under state law to continue [enforcing the challenged statute] regardless of what a federal court might say in an action that does not involve them." 974 F.3d at 1255.

Here, as State Defendants acknowledge, "the voter-challenge provisions [of S.B. 189] are enforced by each of Georgia's 159 counties." ECF No. 283-1 at 50. As in *Jacobson,* then, relief is traceable to and redressable by all 159 counties because "[t]here is no contrary evidence to suggest that the Supervisors would suddenly begin to disregard state law in the absence of instructions from the Secretary." 974 F.3d at 1257. And as Defendants correctly note, "an order that only binds a handful of counties can risk a situation where voters in different counties are treated differently." ECF No. 328 at 20. Especially where Plaintiff SFI has stated an equal protection claim, the lack of certainty with respect to uniform application confers standing as to all 159 counties.

Although Moving Plaintiffs do not rely on the juridical link doctrine, Defendants discuss it at length. This doctrine concerns one set of circumstances under which a plaintiff may sue a defendant class consistent with Article III's

requirements.[4] *See Long,* 93 F.R.D. at 120. In *Long,* the district court recognized that there could be a "juridical link" between putative defendant class members even where "no named plaintiff would have personal claims against most members of the defendant class" if "members of the defendant class are officials of a single state and are charged with enforcing or uniformly acting in accordance with a state statute, or common rule or practice of state-wide application, which is alleged to be unconstitutional." *Id*.

This Court need not apply juridical link analysis (although *Long*'s analysis would apply),[5] because Moving Plaintiffs here have shown more than a juridical link to the defendant class: Moving Plaintiffs are statewide organizations injured by the parties that enforce S.B. 189. *See Fla. Immigrant Coal. v. Uthmeier*, No. 25-21524-

---

[4] The definition of the juridical link varies across circuits, which further renders the Sixth Circuit case which Defendants cite inapposite. *Compare Fox v. Saginaw Cnty., Michigan,* 67 F.4th 284, 288 (6th Cir. 2023), *with Payton,* 308 F.3d at 678 and *Long*, 93 F.R.D. at 120.

[5] Defendants appear to ask this Court to deviate from circuit precedent, but there is no basis in law to do so. ECF No. 328 at 24-26. The juridical link doctrine, if this Court were to apply it, recognizes that "certification of a class changes the standing aspects of a suit, because '[a] properly certified class has a legal status separate from and independent of the interest asserted by the named plaintiff.'" *Payton*, 308 F.3d at 680. Thus, the juridical link doctrine, consistent with Article III, allows plaintiffs to seek redress from a class of local officials who share a common enforcement authority, particularly where plaintiffs could be subject to the jurisdiction of any of those local officials under the challenged statute. *See Long*, 93 F.R.D. at 114. But, as noted above, this Court need not entertain Defendants' invitation to deviate from Eleventh Circuit case law, because Plaintiffs here exceed the requirements of the juridical link doctrine.

CV, 2025 WL 1423357, at *3 (S.D. Fla. Apr. 29, 2025) ("Plaintiffs must support each element of standing with the manner and degree of evidence required at the successive stage of the litigation.") (cleaned up). Moving Plaintiffs have clearly demonstrated that they would have standing against all 159 elected officials, far from a scenario where a plaintiff "does not attempt to connect [his injuries] to the other Counties." *Fox v. Saginaw Cnty., Michigan*, 67 F.4th 284, 293 (6th Cir. 2023). Nor is this a case in which "the named plaintiff is trying to piggy-back on the injuries of the unnamed class members," because each Plaintiff alleges an independent injury against all county defendants. *Payton*, 308 F.3d at 682; *cf.* ECF No. 276 at 20-37. Class certification is appropriate here.

### 2. Defendants' proposal for standing in defendant class actions is unworkable.

Defendants suggest that to satisfy Article III standing before class certification, Moving Plaintiffs must prove individually that all 159 counties have injured them. This is unworkable and incorrect. Moving Plaintiffs challenge the facial validity of a state law with statewide application. Defendants' theory would allow officials in some counties to be able to enforce S.B. 189, even if this court were to declare S.B. 189 unconstitutional on its face. As a practical matter, this would undermine the very purpose of a class action, which is to avoid establishing "incompatible standards of conduct for the party opposing the class." Fed. R. Civ. P. 23(b)(1)(A). Likewise, Defendants' proposal conflates the requirements of Article

III with that of Fed. R. Civ. P. 23(a). *Fox v. Ritz-Carlton Hotel Co., L.L.C.*, 977 F.3d 1039, 1047 (11th Cir. 2020). Defendants' proposal to "present evidence that they have an injury resulting from actions by all 159 county registrars" would swallow the rule, effectively requiring joinder of each defendant even where doing so would be impracticable. *Compare* ECF No. 328 at 26 *with* Fed. R. Civ. P. 23(a) (providing for class certification where joinder would be impracticable). For this reason, courts within the Eleventh Circuit and other circuits have certified defendant classes against local officials where doing so would afford plaintiffs the relief they seek. *E.g., Long*, 93 F.R.D. at 114; *Nat'l Broad. Co.*, 697 F. Supp. at 1217; *Whitaker*, 2006 WL 8553739, at *1; *see also Strawser*, 307 F.R.D. at 608-09; *Harris v. Graddick*, 593 F. Supp. 128, 137 (M.D. Ala. 1984) (collecting cases).

## III. Moving Plaintiffs Satisfy the Requirements of Rule 23(a)

### A. Numerosity

Moving Plaintiffs seek to certify a defendant class of Georgia's 159 county boards of registrars—a class previously certified by this Court, *Nat'l Broad. Co.*, 697 F. Supp. at 1216, and well above the 40-member minimum set by higher courts for class actions, *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986). State Defendants do not dispute that Moving Plaintiffs have satisfied the numerosity requirement; while Gwinnett County Board of Registrations and Elections

incorrectly claims that Moving Plaintiffs have not brought "actual claims," ECF No. 329 at 12, against all 159 county boards.

Relying on *Melio v. Steak n' Shake Operations, Inc*., Gwinnett County essentially argues that Moving Plaintiffs needed to incorporate factual allegations regarding each and every county in Plaintiffs' complaint to satisfy numerosity. 897 F.3d 467 (3rd Cir. 2018). Gwinnett's assertion can be rejected out of hand. First, *Melio* merely says that the party proposing class certification must be able sufficiently identify the members of a class to show joinder is impractical. *Id.* at 487. This Court need not speculate who the members of the class would be here, as Moving Plaintiffs have distinctly identified all 159 county boards of registrars as their proposed class members, whom no party disputes are the sole government bodies who initially adjudicate voter challenges under O.C.G.A. § 21-2-230. *See* ECF Nos. 296 at 29 (Macon-Bibb County); 286 at 31 (Fulton County); 299 at 28-29 (Richmond County). Second, numerosity has never required analysis of the number of factual allegations in a complaint, but merely consideration of the number of members of the proposed class. Fed. R. Civ. P. 23(a)(1); *LaBauve v. Olin Corp*., 231 F.R.D. 632, 665 (S.D. Ala. 2005). Finally, it has never been required that Plaintiffs must include factual allegations in their complaint relating to activity in every county across the state when facially challenging a law of statewide application. *See, e.g.,*

*Martin v. Kemp*, 341 F. Supp. 3d 1326, 1340 (N.D. Ga. 2018). Numerosity is satisfied.

### B. Commonality

Here, a class-wide proceeding will "generate common answers apt to drive the resolution of the litigation." *Walmart Stores, Inc. v. Dukes,* 564 U.S. 338, 350 (2011). Satisfying commonality is a "low hurdle." *Sos v. State Farm Mut. Auto. Ins. Co.*, No. 21-11769, 2023 WL 5608014, at *16 (11th Cir. 2023). Moving Plaintiffs raise questions common to all 159 county boards of registrars: whether the residency provisions of Section 5 of S.B. 189 violate the National Voter Registration Act (NVRA), the Civil Rights Act (CRA), and the U.S. Constitution; and whether Section 4 of S.B. 189 violates the NVRA and the U.S. Constitution. The answers will apply equally to all county boards of registrars.

Courts have routinely found that commonality is satisfied where county level officials enforce a challenged law, have no discretion not to enforce its provisions, and Plaintiffs seek statewide injunctive relief regarding its enforcement. *See, e.g.*, *Strawser*, 307 F.R.D. at 611; *Whitaker*, 2006 WL 8553739, at *2; *Nat'l Broad. Co.*, 697 F. Supp. At 1216. Defendants do not disagree that class certification is proper in such circumstances, but rather assert that, after S.B. 189, Georgia's county boards of registrars retain discretion to outright dismiss certain voter challenges and that the application of the Homeless Voter Mailing address provision depends on the specific

13

circumstances of the voter and whether or not the county has homeless voters at that time. ECF Nos. 328 at 20, 23, 26-29; 329 at 13-15, 19. Defendants are wrong.

"Shall means shall" and the word "creates an obligation impervious to judicial discretion." *Smith v. Spizzirri*, 601 U.S. 472, 476 (2024). S.B. 189 takes away any discretion or individualized decision making by county boards of registrars because the statutory text commands the boards to find probable cause based on certain factual findings and mandates that the mailing address for election purposes of any person in Georgia who is homeless and without a permanent address shall be the registrar's office of the county in which such person resides. O.C.G.A. § 21-2-230(b) ("Probable causes *shall* include . . . .") (emphasis added); O.C.G.A. § 21-2-217(a)(1.1) ("The mailing address. . . *shall* be . . . .") (emphasis added). While in the abstract, different facts can result in different legal outcomes, S.B. 189 guarantees that certain purported facts, such as an allegation that a voter has moved out of the county or is registered at a nonresidential address, regardless of the county they live in, results in the same outcome: a finding of probable cause. *Id.*[6]

---

[6] Gwinnett's attempt to distinguish cases where courts have certified defendant classes of local government officials who lack discretion to enforce election law, *Nat'l Broad. Co.*, 697 F. Supp. 1204 and *Harris*, 593 F. Supp. 128, fails. Gwinnett argues that defendant class certification was proper in those cases because Plaintiffs challenged "practices that necessarily occur in every county in every single election." ECF No. 329 at 14. But *Nat'l Broad. Co.* dealt with a distance requirement for exit pollsters and there was no evidence that exit pollsters were required or always outside of polling places in all 159 counties. 697 F. Supp. 1204. And in

14

Despite the State Defendants' attempts to reinterpret Section 4, the language clearly requires unhoused voters without a permanent address to receive their election-related mail at their county registrar's office. *See* O.C.G.A. § 21-2-217(a)(1.1). Nowhere does the statute specify that the requirement only applies to unhoused voters "lacking a place where they can receive mail." ECF No. 328 at 13. The text of the statute does not afford leeway for unhoused voters who may otherwise receive their mail at a shelter, church, or P.O. Box to continue receiving their election mail there. While Gwinnett and other counties may claim to follow the State's atextual understanding of Section 4,[7] all 159 counties are necessarily bound by the parameters of the law.

Additionally, Defendants unsuccessfully attempt to analogize to *Walmart Stores, Inc.*, 564 U.S. 338; ECF Nos. 328 at 27; 329 at 14-17. But in *Walmart Stores, Inc.,* no uniform policy or law applied to all class members, 564 U.S. at 355, while here, S.B. 189 applies to all members of the proposed class and uniformity in application is required by law. *Fla. State Conf. of N.A.A.C.P. v. Browning*, 522 F.3d 1153, 1186 (11th Cir. 2008) ("When a state accords arbitrary and disparate treatment to voters in different counties, which results in their votes being weighed differently,

---

*Harris*, plaintiffs claimed county officials across the state did not appoint enough Black persons as poll officials, but not every polling place "necessarily" lacked a Black polling place official. 593 F. Supp. at 131.

[7] While Gwinnett states it assumes that other counties are following the State's interpretation of Section 4, it does not know for sure. ECF No. 329 at 21.

those voters are deprived of their constitutional rights to due process and equal protection."). Even State Defendants acknowledge that a "situation where voters in different counties are treated differently" creates constitutional problems. ECF No. 328 at 20. Commonality is satisfied here.

### C. Typicality

Typicality "does not require identical claims or defenses." *State Farm*, 2023 WL 5608014, at *17. "Alignment of interests . . . exists 'if the . . . defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory.'" *Id*. For defendant classes, typicality rests on *legal defenses* and is satisfied despite factual differences when there is similarity in legal theories. Fed. R. Civ. P. 23(a)(3); *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001). Here, typicality is satisfied because Moving Plaintiffs challenge a law of statewide enforcement, the proposed class members all operate under the same statutory framework, and relief is appropriate to the class as a whole. *E.g.*, *Harris*, 593 F. Supp. at 137; *Strawser*, 307 F.R.D. at 613.

Actual defenses made by individual county defendants in this case belie Gwinnett County's *ipso facto* assertion that its defenses are not typical. *See* ECF No. 319 at 20-22. Gwinnett County primarily argues that it has a policy interpreting S.B. 189 and is unaware if other counties have policies interpreting S.B. 189. ECF No. 329 at 19-20. But Gwinnett's policy interpreting S.B. 189 does not change the law's

applicability and requirements on all Georgia county boards of registrars to find probable cause based on certain purported facts. Nor does it change the requirement for unhoused voters without permanent addresses to receive their election related mail at county registrars' offices.

Additionally, Defendants argue typicality cannot be satisfied here because of supposed factual differences between members of the proposed class enforcing S.B. 189. ECF Nos. 328 at 22-23; 329 at 14. But the alleged factual differences do not defeat typicality. In *State Farm*, the Eleventh Circuit upheld class certification where State Farm Insurance failed for varying reasons to pay different members of the plaintiff class the full amount of sales tax and title fees as part of their total loss claims because regardless of those variations, all members of the class suffered a breach of contract. *State Farm*, 2023 WL 5608014, at *17. Here, all Georgia counties must find probable cause based on S.B. 189's criteria and must require unhoused voters without a permanent address to receive their election related mail at the county registrar's office. O.C.G.A. § 21-2-230(b); O.C.G.A. § 21-2-217(a)(1.1). This is true even if some counties do not at this moment have any homeless voters or that some counties have not received challenges, ECF Nos. 328 at 9, 23; 329 at 14. Thus, such differences are immaterial to finding typicality.

### D. Adequacy of Representation

The adequacy of representation inquiry specifically "serves to uncover conflicts of interest between named parties and the class they seek to represent," *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 625 (1997), and "whether the representatives will adequately prosecute the action." *Valley Drug Co. v. Geneva Pharms., Inc*., 350 F.3d 1181, 1189 (11th Cir. 2003). No such conflict or threat of inadequate defense exists, and Defendants do not claim otherwise. Instead, Gwinnett County argues that because it is unaware of the other proposed class members' policies regarding S.B. 189, it is an inadequate representative. But this lack of awareness is ultimately irrelevant. Gwinnett County has the "same duties and responsibilities" as all other Georgia county boards of registrars with respect to enforcing S.B. 189, can continue to assert defenses to Moving Plaintiffs' facial challenges, and can fairly and adequately protect the interests of the other proposed class members. *Nat'l Broad. Co*., 697 F. Supp. at 1217.

### IV.    Class certification is appropriate under Rule 23(b)(1) and (2) and promotes judicial economy and efficiency.

In disputing the risk of "inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct" under Rule 23(b)(1), State Defendants continue their attempts to walk a fine line of both describing the uniformity in determining "probable cause" that O.C.G.A. § 21-2-230 facially seeks to establish, while claiming that a variation in

county approaches to the law precludes class certification. However, Rule 23(b)(1) does not require Moving Plaintiffs to disentangle State Defendants' push and pull arguments on the varying discretion of counties. ECF Nos. 328 at 11-12, 21-22; 305 at 33; 283-1 at 60. Rather, Moving Plaintiffs seek to ensure uniform application of the law and relief for all Georgia voters, which would be impossible to achieve if only some counties are subject to this adjudication or if different counties are subject to different adjudications that establish divergent interpretations of S.B. 189.[8] State Defendants recognize this danger in the context of their equal protection concerns that arise from "an order that only binds a handful of counties." ECF No. 328 at 14. But Rule 23(b)(1) addresses that exact risk of subjecting Georgia counties to "incompatible standards of conduct" in their processing of voter challenges.

The relief requested, enjoining members of the proposed class from enforcing the challenged provisions of S.B. 189, "is identical as to each member of the defendant class," *Nat'l Broad. Co.*, 697 F. Supp. at 1217. State Defendants incorrectly suggest that the only solution available to Moving Plaintiffs is to proceed in state court. ECF No. 328 at 29. But Moving Plaintiffs' request for class certification in federal court promotes judicial economy and efficiency by seeking uniform and consistent relief for all Georgia voters, regardless of where they reside.

---

[8] Indeed, Gwinnett's argument regarding Rule 26(b)(1)(A), that differing circumstances in each county may lead to inconsistent adjudications, disregards this danger of establishing different interpretations of S.B. 189.

Additionally, adjudication in a federal court is appropriate because federal subject matter jurisdiction exists over Plaintiffs' federal constitutional and statutory claims.

Gwinnett County's contention that "it is difficult to square the language of [Rule 23(b)(2)] with the concept of a mass-defendant class action" is contrary to the rule's history and relevant case law. *Compare* ECF No. 329 at 23 *with Amchem*, 521 U.S. at 614 ("Civil rights cases against parties charged with unlawful, class-based discrimination are *prime examples*.") (emphasis added); *see also* Wright & Miller, 7AA Fed. Prac. & Proc. Civ. § 1776 (3d ed. May 20, 2025 update) ("[C]ivil-rights class actions… may also be brought against a defendant class."). This action may be maintained under either Rule 23(b)(1) or (2).

## CONCLUSION

Defendants' responses fail to rebut the common-sense legal reasoning and case law supporting certification of a defendant class in this case. This Court should certify the county class of defendants to allow for the efficient and effective adjudication of this case, which touches the voting rights of all Georgia residents.

Respectfully submitted this 12th day of August, 2025,

*/s/ Katherine L. D'Ambrosio*
Katherine L. D'Ambrosio (Ga. Bar No. 780128)
Jennifer Virostko (Ga. Bar No. 959286)
Ben Watson (Ga. Bar No. 632663)

*/s/ Daniel S. Lenz*
Alice Huling*
Danielle Lang*
Valencia Richardson*
Daniel S. Lenz*
Rachel Appel*

**COUNCILL, GUNNEMANN & CHALLY LLC**
75 14th Street, NE, Suite 2475
Atlanta, GA 30309
(404) 407-5250
kdambrosio@cgc-law.com
jvirostko@cgc-law.com
bwatson@cgc-law.com

Cory Isaacson (Ga. Bar No. 983797)
Akiva Freidlin (Ga. Bar No. 692290)
**ACLU FOUNDATION OF GEORGIA, INC.**
P.O. Box 570738
Atlanta, Georgia 30357
(678) 310-3699
cisaacson@acluga.org
afreidlin@acluga.org

Julie M. Houk*
M. David Rollins-Boyd*
Ryan Snow*
Samantha Heyward*
Jeremy Lewis*
**Lawyers' Committee for Civil Rights Under Law**
1500 K Street NW, Suite 900
Washington, DC 20005
Telephone: (202) 662-8600
General Fax: (202) 783-0857
jhouk@lawyerscommittee.org
drollins-boyd@lawyerscommittee.org
rsnow@lawyerscommittee.org
sheyward@lawyerscommittee.org
jlewis@lawyerscommittee.org

Neil A. Steiner*
Mara Cusker Gonzalez*
Biaunca S. Morris*
**Dechert LLP**

Lucas Della Ventura*
**CAMPAIGN LEGAL CENTER**
1101 14th St. NW, Ste. 400
Washington, D.C. 20005
Tel: (202) 736-2200
Fax: (202) 736-2222
ahuling@campaignlegalcenter.org
dlang@campaignlegalcenter.org
vrichardson@campaignlegalcenter.org
dlenz@campaignlegalcenter.org
rappel@campaignlegalcenter.org
ldellaventura@campaignlegalcenter.org

*Admitted Pro Hac Vice*

*Counsel for Plaintiff Secure Families Initiative*

Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
Telephone: (212) 698-3500
Facsimile: (212) 698-3599
Neil.steiner@dechert.com
Mara.cuskergonzalez@dechert.com
Biaunca.morris@dechert.com

Lindsey B. Cohan*
**Dechert LLP**
515 Congress Ave. STE 1400
Austin, TX 78701
Telephone: (512) 394-3000
Facsimile: (512) 394-3001
Lindsey.cohan@dechert.com

*Admitted Pro Hac Vice*

*Attorneys for Plaintiffs Georgia State
Conference of the NAACP, Georgia
Coalition for the People's Agenda,
and VoteRiders*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to L.R. 7.1(D), the undersigned hereby certifies that the foregoing has been prepared in Times New Roman 14, a font and type selection approved by the Court in L.R. 5.1(C).

> */s/ Daniel S. Lenz\**
> Daniel S. Lenz
> **CAMPAIGN LEGAL CENTER**
> 1101 14th St. NW, Ste. 400
> Washington, D.C. 20005
> (202) 736-2200
> dlenz@campaignlegalcenter.org

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 12, 2025 electronically filed the foregoing REPLY IN SUPPORT OF MOTION TO CERTIFY DEFENDANT CLASS with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to all attorneys of record in this matter.

> */s/ Daniel S. Lenz\**
> Daniel S. Lenz
> **CAMPAIGN LEGAL CENTER**
> 1101 14th St. NW, Ste. 400
> Washington, D.C. 20005
> (202) 736-2200
> dlenz@campaignlegalcenter.org